THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS CARRIZALES *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 1—91—1759, 1—91—1772 cons.

Opinion filed November 25, 1992.—Modified opinion filed February 3, 1993.—Rehearing denied February 5, 1993.

Rita A. Fry, Public Defender, of Chicago (Kyle Wesendorf, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Matthew L. Moodhe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a joint jury trial, defendant Thomas Carrizales was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1) and defendant Hector Carrizales was convicted of first degree murder under the accountability theory (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 5—2(c)). Thomas was sentenced to 34 years' imprisonment, and Hector was sentenced to 28 years' imprisonment. On appeal, Hector asserts that he should not be held accountable for the shooting committed by Thomas. We agree. Thus, we reverse Hector's conviction.

Thomas asserts on appeal that he was denied a fair trial because (1) the prosecutor repeatedly insinuated that he had committed another crime for which no evidence was presented; and (2) the trial court gave the jury the prior inconsistent statement instruction even though the differences between his trial testimony and his custodial statement were insignificant. We affirm Thomas' conviction.

Between 4 and 4:30 a.m. on April 16, 1989, Gilbert Trinidad was shot and killed in the crowded pool room of Roma's Bar at 9247 South Commercial Avenue in Chicago.

Frederick Medrano, who was playing pool when defendant Thomas walked into the pool room, testified that Thomas went up to Gilbert and asked him for a cigarette. When Gilbert refused, Thomas shot him at close range. Medrano stated that Gilbert did not hold his pool cue in a threatening manner or use it to defend himself. Thomas' back was to Medrano when the shots were fired less than a minute after Thomas arrived. Medrano further testified that he did not see Hector in Roma's that night.

Chicago police officer Ronald Guerrero was in Roma's at the time of the shooting. He was off duty and in plainclothes. Guerrero testified that he heard shots fired in the adjacent pool room. Thomas walked into the bar from the pool room waving his gun and then walked toward the back door. When Medrano told Guerrero that Thomas had just shot someone, Guerrero announced that he was a police officer and ordered Thomas to stop. Thomas continued walking toward the back door and pointed his gun at Guerrero. At that point, Guerrero went to the side of the juke box and fired three rounds at Thomas before Thomas went out the back door.

The autopsy indicated that Gilbert was shot at close range. Five bullets and other bullet fragments were recovered from the body. The bullets that entered Gilbert's right center back, right back shoulder, right armpit, left abdomen, and left hand were all surrounded by stippling, indicating that he had been shot at close range. In addition, there were other graze wounds and a bullet lodged in his right thigh.

Gennaro Castillo, a close friend of Gilbert's, testified that, on the evening of April 15, 1989, he and Gilbert went to Just Jim's Bar, which is located at 108th Street and Ewing Avenue in Chicago. There, Castillo saw Thomas, Hector, and Philip Carrizales, although he did not talk to them. Two hours later, Castillo and Gilbert left Just Jim's and went to Roma's, where they ordered drinks and played pool. About 1½ hours later, Castillo saw Thomas, Hector, and Philip arrive. Hector approached Castillo and asked him for a sip of his drink. Castillo gave both Hector and Thomas a drink.

After a few minutes, Hector asked Castillo to come to his car where he had something to drink. Leaving the bar, Castillo told Gilbert to "watch his back." Thomas stayed in the bar and was about 10 feet from Gilbert when Castillo and Hector left. Castillo and Hector walked to Hector's car, which was parked near Roma's back door. On the way to the car, Hector told Castillo that he knew that Castillo and Gilbert were friends, that Gilbert's cousin had "fucked up," and that something might happen or was going to happen to Gilbert. Hector did not want it to come between their friendship.

Hector got into the driver's seat of the car and reached over to open the passenger door for Castillo. As Castillo was getting into the car, he heard gunshots coming from inside Roma's. Hector started the car, and Castillo saw Thomas running from Roma's back door toward the car. Castillo ran toward the front of Roma's. As he ran, he looked back and saw the car drive away. According to Castillo, there were two people in the car as it drove through the alley.

Cynthia Wills, who was Gilbert's girlfriend, testified that she was across the street from Roma's when she saw Hector and Castillo leave the bar and walk to the vacant rear lot. A few minutes later, she saw people running out of Roma's. Then, she saw Hector drive by the bar twice. He was alone in the car.

Moments later, Chicago police officer John Kubiak responded to a police radio message that Officer Sanchez was in pursuit of one of the suspects. The chase was going westbound on 92nd Street so Kubiak drove eastbound on 92nd Street. Hector was intercepted on 92nd Street east of Commercial Avenue, which was one block north of Roma's. There was no one else in the car.

Ruben Rizo, a friend of Gilbert's, testified that a couple of weeks before the shooting, he, Gilbert, and Benigno Sentano were in Denny's Bar, which is across the street from Roma's. Hector approached Gilbert and a heated argument ensued. Hector said something about Gilbert's cousin and then threatened to kill Gilbert. The trial court admonished the jury that Rizo's testimony regarding the argument between Gilbert and Hector was not admissible against Thomas. Benigno Sentano, also a friend of Gilbert's, testified to the same incident in substantially the same way.

In his own behalf, Thomas testified that he had been drinking since 7 p.m. on Friday, April 15, 1989. He and his brothers, Hector and Philip, had been to their uncle's house and to several bars, including Just Jim's Bar, before they went to Roma's Bar after 4 a.m.

Thomas was carrying a loaded gun that he began carrying six years earlier when he and his brother, Peter, were shot by Gilbert's

cousin as they walked down the street. Thomas was shot in the face, and Peter was killed. At the time of Gilbert's shooting, Thomas claimed that he did not know that it was Gilbert's relative who had previously shot him and killed his brother. He testified that he did not even know Gilbert. In addition, Thomas stated that Hector did not know that he was carrying a gun on the night of Gilbert's shooting.

When the three brothers arrived at Roma's, they parked in the back because there were no spaces on the street. Hector kept the car keys. After going in through the front door, Thomas saw Gilbert playing pool with his friends. An angry Gilbert and his five friends stepped toward Thomas with their pool cues in their fists. When Gilbert reached for something in his pocket, Thomas thought he was going to shoot him, so he pulled his .357 revolver from his waistband and shot Gilbert twice from a distance of 10 to 12 feet.

After Thomas fired the shots, he heard screaming and someone began shooting at him. The bar was smoky and crowded, and he did not know who was shooting at him. He did not hear Officer Guerrero announce that he was a police officer. Thomas ran to the washroom and then crawled down the back hallway toward the back door. After some difficulty, he went out the back door.

Thomas testified that Hector did not drive him away. He did not even see Hector or Castillo after he left the bar. Since the car was locked, he ran to a nearby prairie where he wrapped the gun in red plastic and put it into the ground. He then went near his old grammar school and fell asleep in a gangway. When Thomas awoke in the morning, he called his wife, who told him that the police were looking for him. Thomas went to a relative's home to clean up and eat something, then surrendered himself to the police.

At the police station, Thomas was hung over. He directed the police to the gun and gave a signed confession, which substantially corroborated his trial testimony.

Over defense counsel's objection, the prosecutor was allowed to cross-examine Thomas about the details of the previous incident during which he and his brother, Peter, were shot. Thomas denied that he and his brother were trying to force their way into the 56-year-old man's home at the time. The defense counsel's objection was overruled. When the prosecutor asked Thomas if he or his brother provoked the shooting in any way, the defense counsel's objection was sustained.

On redirect examination, the defense counsel elicited that Thomas was not charged with a crime, but the man who did the shooting was charged with shooting his brother. On re-cross-examination, the prose-

cutor asked whether the man was charged only with involuntary manslaughter because of what Thomas and his brother were doing at the time. The trial court sustained defense counsel's objection and instructed the jury to disregard it.

During the jury instruction conference, Thomas' defense counsel objected to Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d No. 3.11 (Supp. 1989)) on prior inconsistent statements. The trial court allowed the instruction.

Following closing arguments, the jury convicted Thomas of first degree murder and Hector of first degree murder under the accountability theory. The trial court then sentenced Thomas to 34 years' imprisonment and Hector to 28 years' imprisonment.

On appeal, Hector asserts that he is not accountable for first degree murder because of Thomas' actions before, during, and after the shooting of Gilbert Trinidad. Hector contends that his conviction was based on speculation and suspicion, not facts. Although the State proved that Hector and Gilbert had argued a couple of weeks before the shooting, defendant contends that there was no evidence presented that the argument was part of any plan between Hector and Thomas to harm Gilbert.

In addition, Hector declares that there was no evidence presented that Hector knew that Thomas had a gun when they entered Roma's Bar; that Hector's leaving the bar with Castillo aided or facilitated the shooting; that Hector's comments to Castillo referred to anything more than a verbal altercation or fist fight; or that Hector aided Thomas after the shooting.

Defendant's reliance on *People v. Evans* (1981), 87 Ill. 2d 77, 85, is inapplicable because *Evans* was decided under the former rule that the State must exclude every reasonable hypothesis of innocence when a conviction is based on circumstantial evidence. The supreme court stated that "[t]he evidence presented leads to the conclusion that the State failed to meet its burden of excluding every reasonable hypothesis of innocence. Consequently, [defendant's] convictions *** were correctly reversed by the appellate court." *Evans*, 87 Ill. 2d at 85.

When a conviction is based solely on circumstantial evidence, it will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) No longer is the State required to exclude every reasonable hypothesis of innocence. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) The correct standard is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261.

Defendant contrasts this case to *People v. Calvillo* (1988), 170 Ill. App. 3d 1070, 1077, where the defendant was found accountable for murder after driving the shooter to the scene knowing that he was planning to kill someone, identifying the victim for the shooter, and waiting for the shooter until after the shooting. The court concluded that the defendant facilitated the offense and thereby increased the strong probability of the victim's death or great bodily harm. *Calvillo*, 170 Ill. App. 3d at 1077.

Hector concludes that the evidence against him only raises a suspicion that he may have been involved in the shooting. He maintains that the inferences necessary to find him accountable cannot be made from the evidence presented because there are too many missing links.

The State responds that the evidence, viewed in the light most favorable to the prosecution, proves Hector guilty beyond a reasonable doubt of first degree murder under the accountability theory. The State argues that the surrounding circumstances that imply Hector's intent to promote or facilitate Gilbert's murder include (1) the testimony of Rizo and Sentano about Hector's threat to kill Gilbert during an argument a couple of weeks before the shooting; (2) Castillo's testimony that Hector took him outside and told him that something was going to happen to Gilbert; and (3) Castillo's testimony that he saw Thomas run out of Roma's back door toward Hector's car and that he saw two people in the car when it drove away.

We are disturbed by the State's gross mischaracterization of the record in its brief. According to the State, "Mr. Castillo heard gunfire ring out in Roma's Bar and he observed Thomas run out the rear door of the bar and get in Hector's car. Mr. Castillo observed both Hector and Thomas drive away from the scene of the crime." If that had been the testimony, this appeal would be very different. That, however, was not the testimony. The record reveals that Castillo testified that he saw Thomas run out the back door of Roma's toward the car and that he saw two people in the car as it drove away. He never testified that he saw Thomas get into the car or that he saw Thomas in the car as Hector drove away.

In addition, the State incorrectly maintains that Wills' testimony corroborates Castillo's testimony and contradicts Thomas' testimony. While Castillo testified that he saw two people in the car when it drove away, Wills testified that she saw Hector twice drive by alone

immediately after the shooting. Regarding Thomas' testimony that Hector was not in the bar at the time of the shooting, Wills' testimony corroborates that fact because she saw Hector leave the bar before the shooting began. In addition, Wills' testimony corroborates Thomas' testimony that Hector did not drive him away from the scene because Wills testified that immediately after the shooting, Hector drove by twice. She saw only one person in the car.

The State hypothesizes that Thomas may have ducked down in the car when Hector drove by twice. Even if that hypothesis was accurate, it does not explain how Wills' testimony corroborates Castillo's testimony and contradicts Thomas' testimony.

The State contends that Castillo's testimony, by itself, was sufficient to support Hector's conviction for first degree murder under the theory of accountability. To support that argument, the State cites *People v. Nightengale* (1988), 168 Ill. App. 3d 968, 973, where the court held that the testimony of one eyewitness is sufficient to support a conviction. *Nightengale* is inapplicable, however, because Castillo was not an eyewitness to the shooting.

In addition, the State answers defendant's argument that Hector did not know that Thomas was carrying a gun by remarking that it was common knowledge that Thomas had been carrying a gun since he was shot six years earlier. However, there was no evidence presented at trial regarding any common knowledge that Thomas always carried a gun.

The State concludes that a juror could reasonably infer from Hector's actions (1) that he knew his brother was about to murder Gilbert; (2) that he lured Castillo away from the scene so that he would not interfere with the plan to kill Gilbert, who was a friend of Castillo's; and (3) that he got into his car and started the engine to prepare for a getaway. We disagree.

When a conviction is based on circumstantial evidence, the jury can make inferences from the actual evidence only if they are reasonable. (*Tot v. United States* (1943), 319 U.S. 463, 467, 87 L. Ed. 1519, 1524, 63 S. Ct. 1241, 1244.) For a conviction on the accountability theory, the State must establish beyond a reasonable doubt that (1) the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the crime; (2) the defendant's participation took place before or during the commission of the crime; and (3) the defendant had the concurrent intent to promote or facilitate the commission of the crime. *People v. MacFarland* (1992), 228 Ill. App. 3d 107, 122; Ill. Rev. Stat. 1987, ch. 38, par. 5—2.

There must be proof of the intent to aid, abet, or attempt to aid another in the perpetration of the crime. (*Evans*, 87 Ill. 2d at 83.) To prove that the defendant had the specific intent to promote or facilitate the crime, the State must establish beyond a reasonable doubt that the defendant shared the criminal intent of the principal or was engaged in a common design. (*People v. Stanciel* (1992), 153 Ill. 2d 218, 234-35.) That proof can be inferred from the surrounding circumstances. *People v. Chavez* (1992), 228 Ill. App. 3d 54, 72.

Although the person does not have to actively participate in the overt act, mere presence at the scene, even with knowledge that the crime is being committed, is not sufficient to establish accountability for the actions of another. (*Evans*, 87 Ill. 2d at 83; *MacFarland*, 228 Ill. App. 3d at 122.) In addition, mere presence at the scene of a crime coupled with flight from the scene of a crime is insufficient to establish accountability. (*People v. Lopez* (1979), 72 Ill. App. 3d 713, 716.) Nevertheless, circumstances showing there was a common design to commit a crime (*People v. Tate* (1976), 63 Ill. 2d 105, 109; *MacFarland*, 228 Ill. App. 3d at 122), or presence at the scene of the crime in addition to acts after its commission may be enough to establish accountability. *MacFarland*, 228 Ill. App. 3d at 122.

■ Viewing the evidence in the light most favorable to the prosecution, the State did not prove beyond a reasonable doubt that Hector was guilty of first degree murder under the accountability theory. The evidence showed that Hector had an argument with Gilbert a couple of weeks before the shooting. During that argument, Hector threatened to kill Gilbert. Thomas was not present at the time nor was there any indication that he was aware of the argument.

In addition, the evidence most favorable to the prosecution showed that Hector and Thomas visited a number of bars on the night of the shooting. Around 4 a.m., they arrived at Roma's Bar. Soon afterwards, Hector and Castillo left the bar. On his way out, Castillo told Gilbert to "watch his back." Then, Thomas approached Gilbert and asked him for a cigarette. When Gilbert refused, Thomas shot him five times. Thomas ran out the back door of Roma's toward Hector's car. Castillo then saw two people in Hector's car as it sped away.

Immediately afterwards, Gilbert's girlfriend, Cynthia Wills, saw Hector drive by twice by himself. Within minutes, Hector's car was stopped by police at 92nd Street and Commercial Avenue. Only Hector was in the car. The next day, the police found the murder weapon buried in a prairie about four blocks from Roma's Bar.

The most important evidence in the State's favor was Hector's statement to Castillo shortly after they left the bar. Hector told Cas-

tillo that he knew that he was friends with Gilbert, that Gilbert's cousin had "fucked up," that something might or was going to happen to Gilbert, and that Hector did not want it to come between their friendship. That statement, however, did not show that Hector knew that Thomas was going to kill Gilbert that night or that Hector aided him in any way.

All that evidence is not sufficient to prove beyond a reasonable doubt that Hector abetted, agreed, or attempted to aid Thomas in the planning or commission of the shooting either before or during the shooting or that Hector had the concurrent, specific intent to promote or facilitate the commission of the shooting. Thus, Hector's conviction for first degree murder under the accountability theory is reversed due to insufficient evidence.

Defendant Thomas asserts on appeal that he was denied a fair trial when (1) the State repeatedly insinuated on cross-examination that he had committed another crime six years earlier without presenting any proof; and (2) the trial court erred by giving the prior inconsistent statements instruction (IPI Criminal 2d No. 3.11 (Supp. 1989)) even though the differences between his trial testimony and his custodial statement were insignificant.

■■ Thomas waived both issues on appeal because he failed to raise them in his motion for a new trial. Failure to object at trial and raise an issue in the written motion for a new trial constitutes a waiver of that issue (*People v. Enoch* (1988), 122 Ill. 2d 176, 188) and it cannot be urged as grounds for reversal on review. (*People v. Caballero* (1984), 102 Ill. 2d 23.) Furthermore, the plain error rule (134 Ill. 2d R. 615(a)) is not applicable because the record does not plainly show either that the alleged errors affected Thomas' substantial rights or that the evidence was closely balanced. *People v. Pickett* (1973), 54 Ill. 2d 280, 283.

Based on the foregoing, Hector's conviction for first degree murder under the accountability theory is reversed and Thomas' conviction for first degree murder is affirmed.

Reversed in part; affirmed in part.

RIZZI and TULLY, JJ., concur.