THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GERHARD JOHNSON *et al.*, Defendants-Appellants.

First District (6th Division)   No. 1—93—0374

Opinion filed March 18, 1994.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells, Assistant Public Defender, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Veronica Calderon, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

After a bench trial, defendants Gerhard Johnson and Johnny Weaver were found guilty of first degree murder. Johnson was sentenced to a term of 40 years, and Weaver was sentenced to a term of 25 years. On appeal, Johnson contends that he was not proved guilty beyond a reasonable doubt or, in the alternative, that his sentence of 40 years was excessive. Weaver contends that it was not proved beyond a reasonable doubt that he was accountable for the acts of the shooter and that he was denied a fair trial because of certain comments made by the trial judge. The pertinent facts follow.

On June 5, 1989, Randy Patterson was shot and killed in an apartment located at 3030 West Fulton Avenue in Chicago.

Philicia English testified for the State that on June 5 she went to a third-floor Fulton Avenue apartment to visit her friend, Corlette

Temple. Temple and Freddie Golden lived there together. In addition to Temple and Golden, the deceased and two men known as "Red" and Mark were present. They were all sitting watching television. English had heard that Golden was involved in drugs but did not see anyone doing drugs and was not offered any.

At about 10 p.m., English and Temple decided to go out to get something to eat. The deceased opened the door for them because the apartment door was jammed. At that point, English observed a man at the door with a gun who was shooting in her direction from about six feet away. Two other men were in the hallway, but English was only able to see one of those two men.

The man English identified as Johnson entered the apartment and fired two more shots before she and Temple fell to the floor. English observed Johnson for about 10 seconds before she fell; Johnson walked over her fallen body as he continued into the apartment. He ran past her still firing shots, and she was close enough to touch him. At that point, English heard the sound of a breaking window inside the apartment. Johnson ran out of the apartment, kicking English in the head as he jumped over her.

As Johnson ran into the apartment firing shots, English had an opportunity to see the man who was with Johnson. She identified him as Weaver. She had a good opportunity to view Weaver because there was a bright ceiling light in the hallway. When the window breaking occurred, Weaver ran down the stairs. After the two defendants fled, English and Temple went outside and found the deceased's body on the ground. The police arrived shortly thereafter.

English identified Johnson to the police as a 19- or 20-year-old black male wearing a Chicago Bears jacket who was about 5 feet 7 inches tall, weighed 160 pounds and had a low haircut. She identified Weaver as a lighter complexioned black male between 5 feet 7 inches and 6 feet tall, weighing between 170 and 180 pounds. English identified both defendants in a police station lineup two days after the crime and again at trial.

Corlette Temple testified for the State, and her testimony mirrored that of English in substantial detail. At the time the two women were leaving the apartment to get something to eat, burglar bars were fastened to the apartment door. As a result, the deceased unlocked the bars and opened the door for them.

As they left the apartment, Temple observed three men standing on the side of the door. One of the men fired three shots from his gun, and Temple immediately hit the floor, pulling English down with her. The man who was firing shots jumped over both women and fired five more shots. Temple also heard glass breaking. After

the shooter entered the apartment, Temple noticed that the man in the hallway, whom she identified as Weaver, remained for a moment and then ran down the stairs. After the two men left, Temple and English went downstairs and observed the deceased's body lying on the ground.

Temple was unable to identify the shooter. She stated that he was a black male, approximately 5 feet 6 inches tall, weighing between 150 and 160 pounds, with a dark complexion and a low haircut. He was wearing blue jeans, a white shirt, a black Chicago Bears jacket, and a hat.

Temple was able to identify Weaver as the man in the hallway. Weaver was wearing blue jeans, a white shirt, and a navy blue jogging suit jacket with gold stripes down the side. Temple identified Weaver at trial.

Officer Zamb of the Chicago police department testified for the State that on the evening of June 5, 1989, he and his partner received a call over their squad car radio that shots had been fired at the Fulton Avenue address. They drove to the scene and found the deceased lying in the grass with a gunshot wound to the left side. English and Temple told Zamb that they had witnessed the murder. After receiving a physical description of the offenders from the women, Zamb sent out a flash message containing these descriptions.

James Hamlin, who was 16 years old, testified for the State that on June 5, 1989, he and Steven Wilkins were selling cocaine at a play lot at 3030 West Fulton. They were employed by Viola Jones and Anthony Robinson. Jones was a member of the Gangster Disciples, as was Wilkins.

While Hamlin and Wilkins were selling the drugs, Golden arrived with several other men. They were all carrying baseball bats. Hamlin and Wilkins ran to another drug location, but Golden and his companions followed them. Golden told Hamlin that the Fulton Avenue lot belonged to him, and only he could sell drugs there. As the two groups were fighting and arguing, Jones arrived on the scene. After Golden told Jones that the Fulton Avenue lot was his drug spot, Jones replied that she had checked the address out and that it was no one else's drug spot. Jones told Golden that she was not going to move.

After Golden left the scene, Jones told Hamlin and Parker Miller to return to the Fulton Avenue lot and recover the drugs that had been left there. However, when the pair returned to the lot, they were informed that Golden had taken the drugs.

Hamlin and Miller went to Jones' residence on Warren Avenue and told her what Golden had done. There were several other persons

present. Jones then beeped two southside members of the Gangster Disciples, Shorty G. and Cold Black. Shortly thereafter, Shorty G., accompanied by three other men, arrived at Jones' residence. Shorty G. informed the group that two of the men were armed. After Shorty G. learned of the confrontation with Golden, he called Hamlin a coward and ordered him to leave.

After Hamlin went downstairs, Cold Black, accompanied by three men, arrived. Everyone, including Hamlin, went back up to Jones' apartment. When Cold Black asked Jones and Robinson how they wanted the matter handled, they replied that if they did not get their drugs back, they wanted Golden killed. Cold Black subsequently told Hamlin to leave the meeting, and Hamlin spent the night with a friend.

On June 5, 1989, Hamlin spoke to the police about Patterson's death. Hamlin subsequently went to the police station where he was shown photographs of some of the men who were at the meeting with Jones. Hamlin recognized some of the men, but he did not know the men who came with Shorty G. or Cold Black. There were many men present at the meeting, and the police did not show him photographs of everyone who was present. Although Hamlin was present at the meeting for 30 minutes, he did not have a good chance to see all the men who were present.

Detective James Mercurio of the Chicago police department testified for the State that he was assigned to investigate the murder of Patterson. On June 7, 1989, he interviewed Parker Miller. He showed Miller a number of photographs which had been assembled by the Gang Crimes South unit of the police department. Photographs of defendants were enclosed in this group. After Miller viewed the photographs, Mercurio asked members of Gang Crimes South to arrest defendants. They were arrested, and Mercurio arranged for a police station lineup. At that lineup on June 7, 1989, English identified both defendants.

Officer John Risley of Gang Crimes South testified for the State that his police assignment was to monitor the activities of Black Gangster Disciples. After testifying as to his background and qualifications, Risley was qualified by the trial court as an expert in the field of gang crime.

After Risley furnished Mercurio with photographs of Gangster Disciples living on the south side of Chicago, Mercurio directed him to arrest defendants for the murder of Patterson. Risley proceeded to a southside housing project and arrested Johnson and Weaver. In Risley's opinion, both defendants were members of the Black Gangster Disciples street gang.

## DISCUSSION OF ISSUES PRESENTED BY JOHNSON

Johnson contends that he was not proved guilty of first degree murder beyond a reasonable doubt.

The relevant question where a conviction is challenged based on insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 461, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Where the identity of the accused is at issue, the testimony of a single witness, who had ample opportunity to form a positive identification, is sufficient to convict, even if the identification testimony is contradicted, provided that the witness is credible and the accused is viewed under circumstances which would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) In a bench trial, it is for the trial judge to determine the credibility of witnesses, to weigh evidence, draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.

■ Philicia English positively identified Johnson as the murderer of Randy Patterson. She testified that when she first saw Johnson, he was advancing towards her, firing a gun. Approximately 10 seconds after Johnson began shooting, English fell to the floor, but was still able to observe him. Indeed, Johnson had to step over her, and she was close enough to touch him. English also testified that the lighting was adequate. She gave the police a detailed description of Johnson: he was 5 feet 7 inches tall, weighed 160 pounds, was 19 or 20 years old, and wore a Chicago Bears jacket. English identified Johnson in a lineup two days after the murder, and she identified him again at trial. The trial judge noted that English was a credible witness. We also note that, while Temple was unable to identify Johnson, her testimony corroborated that of English in significant detail.

Johnson's argument that he was not proved guilty of first degree murder beyond a reasonable doubt is without merit, and he was properly convicted of that crime.

Johnson contends in the alternative that the sentence imposed on him was excessive.

A reviewing court's power to reduce or modify sentences is limited to those cases in which a trial court has abused its discretion. (*People v. Streit* (1991), 142 Ill. 2d 13, 566 N.E.2d 1351.) And a trial court's sentencing decision is entitled to great deference by a reviewing court. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■ In the present case, the presentencing investigation report disclosed that Johnson was 20 years old, had no adult criminal convictions, and was enrolled in a GED program to obtain an education equivalent to a high school diploma. The trial judge considered the foregoing factors, but found that Johnson had committed a random, violent and senseless crime. He thereupon sentenced Johnson to a term of 40 years. In imposing sentence, a trial judge must be concerned with the rehabilitation of a defendant, but also with the need to deter similar criminal conduct, to protect society from law violators, and to encourage respect for the law. (*People v. Hines* (1976), 44 Ill. App. 3d 204, 357 N.E.2d 884.) Illinois statutes provide a term of not less than 20 nor more than 60 years for first degree murder. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)(a).) The sentence of 40 years imposed on Johnson was well within that range, and we will not disturb it.

DISCUSSION OF ISSUES PRESENTED BY WEAVER

Weaver contends that it was not proved beyond a reasonable doubt that he was accountable for the murder of Patterson, and also that he was denied a fair trial because of certain comments made by the trial judge.

In an accountability case, the State must prove beyond a reasonable doubt that the defendant had the specific intent to promote or facilitate the crime by showing that the defendant shared the criminal intent of the principal or engaged in a common design. (*People v. Carrizales* (1992), 240 Ill. App. 3d 893, 608 N.E.2d 30.) Mere presence at the scene of the crime is not culpable conduct and knowledge that a crime is being committed is insufficient to establish aiding or abetting. (*People v. Grice* (1981), 87 Ill. App. 3d 718, 410 N.E.2d 209.) The intent to promote or facilitate the crime can be inferred from the surrounding circumstances. (*People v. Carrizales*, 240 Ill. App. 3d 893, 608 N.E.2d 30.) A defendant's conduct subsequent to the offense may raise an inference of prior or concurrent participation. *People v. Grice*, 87 Ill. App. 3d 718, 410 N.E.2d 209.

■ In the present case, ample evidence was introduced to show that Weaver was accountable for Patterson's murder. Temple testified that when Patterson opened the door, defendants were standing next to each other at the side of the door. Weaver was not merely present at the scene, but remained there after Johnson fired several shots in the direction of English and Temple. Weaver also stayed there even after Johnson jumped over the two women and continued firing shots. Weaver ran down the stairs only after the sound of breaking glass was heard. That occurred when the deceased

unsuccessfully tried to save his life by jumping out a window. When Weaver did run down the stairs, he was followed moments later by Johnson.

The trial judge also heard the testimony of Hamlin that the Black Gangster Disciples, of which Weaver was a member, had a strong motive and apparent plan to kill Golden, the owner of the apartment. Finally, Weaver did not disassociate himself from Johnson after the crime nor did he notify the authorities of the occurrence. Indeed, both defendants were arrested together two days after the murder. Weaver's participation in a common scheme established his guilt of murder on an accountability theory beyond a reasonable doubt.

■ Weaver also contends that certain comments of the trial judge deprived him of a fair trial. Weaver asserts that the trial judge impermissibly shifted the burden of proof to him where his guilt was based solely on the basis of his presence at the crime scene. At the hearing on Weaver's motion for a new trial, the judge stated that since Weaver was "present by virtue of the identification made by two witnesses on the evening in question, I can see no reason why he would be there except to aid and abet."

When viewed in a vacuum, the comment might be considered improper. However, at the time of sentencing and at the motion for a new trial, the trial judge expressly and fully considered all the elements present in finding Weaver guilty of murder under an accountability theory: Weaver's affiliation with the Black Gangster Disciples; his presence while Johnson was firing at the two women and the deceased; his flight from the scene moments before Johnson; and his arrest with Johnson a few days after the crime. It is clear that the trial judge considered the totality of the circumstances in finding Weaver guilty, and his isolated comment did not deprive Weaver of a fair trial.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed.

Judgments affirmed.

RAKOWSKI and GIANNIS, JJ., concur.