THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL DEVINE, Defendant-Appellant.

First District (4th Division)   No. 1—96—3971

Opinion filed March 12, 1998.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Bryan Hofeld, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Daniel Devine, was charged with the offense of felony theft. Following a bench trial, he was found guilty, sentenced to 30 months' probation and ordered to pay $8,778.95 in restitution to Eugene's Fireside and Banquet Center. Defendant appeals. We reverse and remand.

From April 1993 through September 1993, defendant worked as a banquet manager at Eugene's Fireside and Banquet Center located in Morton Grove, Illinois. Defendant also rented a hotel room at Eugene's as his residence.

On September 18, 1993, defendant managed a wedding reception for the Fousekis family. Despite Eugene's policy that such events be

paid for in advance, on the day of the Fousekis reception there remained an unpaid balance of $7,737.50. Upon their arrival, the bride and groom assured defendant that they would pay the balance from cash gifts they received. After the banquet, the couple paid defendant $7,737.50 in cash, and defendant gave Mrs. Fousekis a receipt marked paid.

The following day, September 19, 1993, defendant managed a fortieth anniversary brunch for the Starobinskys. The Starobinskys owed a balance of $1,078.95. After the party, Mr. Starobinsky gave defendant $1,078.95 in cash, and defendant gave him a receipt marked paid.

The standard procedure at Eugene's was for defendant to deposit the money received from the two banquets through the drop slot of the safe located in the office of the bookkeeper, Ali Tyburski. Defendant maintains that he followed normal operating procedures and deposited envelopes containing the funds and related paperwork into the drop slot of the safe. It is uncontested that the only two people who had the combination to the safe were Ali Tyburski and one of the co-owners of Eugene's, Elizabeth Boris.

The evidence showed that on September 20, 1993, at approximately 5 a.m., defendant left the hotel in a taxi cab carrying a suitcase, went to Midway Airport and boarded a plane for Orlando to Miami Beach, Florida.

On September 20, 1993, upon arriving to work shortly after 9 a.m., Ali Tyburski was informed that defendant had not shown up for work. Later that morning, Tyburski went to her office, opened the safe and removed the envelopes containing cash that had been deposited over the weekend. Tyburski discovered the money that defendant collected from the Fousekis and Starobinsky banquets had not been deposited into the safe.

Mrs. Boris arrived at work around noon on September 20, 1993. Tyburski informed her that defendant had not arrived for work and that the money from the banquets he managed over the weekend was not in the safe. Mrs. Boris and Tyburski then went to defendant's room, where they found his private belongings gone and small change and horse betting receipts strewn about the room. They also found the keys to defendant's office. Believing that defendant may have left the money in his office, Mrs. Boris and Tyburski went to defendant's office and checked inside his desk. The money was not in defendant's office.

Co-owner Eugene Boris was notified of the missing money. He called the Fousekises and the Starobinskys and asked whether they had paid defendant. Mr. Boris was informed that defendant had been

paid the outstanding balances for the Fousekis and Starobinsky banquets. Mr. Boris called the police and reported the money stolen a day after it was discovered missing.

Upon defendant's return from Florida, he discovered that the police were looking for him and went to the Morton Grove police station, where he was arrested. Following a bench trial, defendant was found guilty of theft.

Defendant contends he was not proven guilty beyond a reasonable doubt and that his conviction should be reversed because: (1) the testimony of Mr. and Mrs. Boris was impeached, contradictory and palpably improbable; (2) the circuit court misconstrued the evidence; (3) he was denied the right to be proved guilty beyond a reasonable doubt and of the presumption of innocence; (4) the prosecution failed to show that anything was taken from a cognizable business entity; (5) the prosecution failed to prove the unauthorized control element of theft; and (6) the information on which he was tried was neither signed by the State's Attorney nor supported by affidavit.

■ The standard of review on a challenge to the sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosection, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Juarez*, 278 Ill. App. 3d 286, 662 N.E.2d 567 (1996). A reviewing court should apply this standard regardless of whether the evidence is direct or circumstantial and should not substitute its judgment for that of the finder of fact on questions involving the weight of the evidence or the credibility of the witnesses. *People v. Sutherland*, 155 Ill. 2d 1, 610 N.E.2d 1 (1992). A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of a defendant's guilt. *People v. Byron*, 164 Ill. 2d 279, 647 N.E.2d 946 (1995).

The record reveals that there were several witnesses whose collective testimonies established that on September 18 and 19, 1993, defendant collected approximately $8,816.45 in cash from the Fousekis and Starobinsky functions; only Mrs. Boris and the bookkeeper, Ali Tyburski, knew the combination to the safe; neither Mrs. Boris nor Ali Tyburski entered the safe over the weekend of September 18 and 19, 1993; on September 20, 1993, at approximately 5 a.m., without providing any prior notification, defendant left his job and residence at Eugene's and flew to Miami Beach, Florida, where he remained for two months; and on that same morning, the bookkeeper, Ali Tyburski, discovered the money had not been deposited in the safe and defendant could not be found. Notwithstanding this evi-

dence, as we will discuss below, the record indicates that the circuit court applied the improper burden of proof to defendant's case.

■ As to defendant's contention that Mr. and Mrs. Boris' testimonies were impeached, contradictory and palpably improbable, we disagree. It is within the province of the trier of fact to determine the weight and credibility of each witness's testimony. *People v. Medeiros*, 249 Ill. App. 3d 139, 618 N.E.2d 1065 (1993). In a bench trial, as here, it is for the trial judge to determine the credibility of witnesses, to weigh evidence, draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *People v. Johnson*, 260 Ill. App. 3d 558, 632 N.E.2d 75 (1994).

■ In this instance, the judge found the testimonies of the witnesses to be credible. After hearing all the testimony and evidence, the judge stated that defendant's "whole defense was based on throwing enough mud at the State's witnesses ***, and yet, there wasn't a single thing that supported [defendant's] theory other than to defame the other witnesses." The court concluded that "[defendant] didn't impeach them. [He] might have soiled their reputations, but [he] didn't impeach them."

Additionally, the court considered the fact that Mrs. Boris testified that she did not go into the safe on September 19 or 20, 1993, then later testified that she could not remember. The record therefore does not support defendant's contention that the court misconstrued the evidence.

■ Defendant further contends that the circuit court limited his right to present a defense and improperly curtailed cross-examination of Mr. Boris concerning his gambling and the reason he did not have the combination to the safe; whether Mrs. Boris could have gone into the safe had she wanted to; and Ali Tyburski's employment history at the Rialto Tap. Initially, we note defendant has waived this issue by failing to make offers of proof in the circuit court. *People v. Andrews*, 146 Ill. 2d 413, 588 N.E.2d 1126 (1992).

Absent waiver, careful review of the record makes clear that the court did not improperly limit defendant's right to present a defense or cross-examine. The court's decision to restrict defense counsel's cross-examinations to questions bearing significance to the facts of the case and the scope of direct examination fell within the court's discretion to control the case and limit direct and cross-examination of witnesses. Unless the circuit court manifestly abuses that discretion, there is no error. *People v. Biro*, 260 Ill. App. 3d 1012, 636 N.E.2d 803 (1994).

Here, as the court correctly noted, the relevant inquiry of Mr. Boris regarding the combination to the safe was whether he kept the

combination, not why he did not keep the combination. Notwithstanding, Mr. Boris did testify that he did not keep the combination to the safe, not because Mrs. Boris kept it from him, but because Mrs. Boris handled the money side of the business. Since Mr. Boris had already provided testimony as to why he did not keep the combination to the safe, there was no abuse of discretion in the court's excluding further inquiry regarding whether or why Mr. Boris did not keep the safe's combination.

Moreover, the fact that Mrs. Boris could have gone into the safe had she wanted to had already been presented and was a proper subject for closing argument. The evidence established that Mrs. Boris had the combination to the safe and was at Eugene's on Sunday, September 19, 1993. Accordingly, defense counsel was not deprived of the opportunity to present this evidence.

■ As to defendant's contention that the court erred in excluding cross-examination regarding Ali Tyburski's employment history with the Borises at the Rialto Tap, defense counsel's cross-examination addressing that issue was properly limited to the facts relevant to this case and the scope of direct examination. There was no abuse of discretion by the court.

■ Defendant also asserts that the State failed to prove that anything was taken from a cognizable business entity. However, Mr. and Mrs. Boris testified that they were the owners of Eugene's Fireside Inn and Restaurant in Morton Grove. In addition, Mrs. Boris testified that European Investments, Ltd., is the corporation that owns the business interest of Fireside Inn. Therefore, both Mr. and Mrs. Boris had knowledge of Eugene's corporate ownership and testified to that fact. Hence, defendant's assertion is without merit.

■ Defendant also contends that his conviction should be reversed because the information on which he was tried was neither signed by the State's Attorney nor supported by affidavit as required by section 111—3(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—3(b) (West 1992)). Therefore, defendant argues that the circuit court did not have jurisdiction and the proceedings were wholly void.

Our supreme court has held that " '[a] defendant has the fundamental right, under both the Federal (U.S. Const., amend. VI) and State constitutions (Ill. Const. 1970, art. I, sec. 8), to be informed of "the nature and cause" of criminal accusations made against him. In Illinois, this general right is given substance by section 111—3 of the Code of Criminal Procedure of 1963 [725 ILCS 5/111—3 (West 1992)].' " *People v. Nash*, 173 Ill. 2d 423, 428-29, 672 N.E.2d 1166 (1996), quoting *People v. Smith*, 99 Ill. 2d 467, 470 (1984).

Under section 111—3, the charging instrument must set forth

the nature and elements of the offense charged. 725 ILCS 5/111—3(a)(3) (West 1992). Where the statute defining the offense specifies the type of conduct prohibited, this requirement is satisfied if the charging instrument states the offense in the language of the statute. Where, however, the statute does not define or describe the act or acts constituting the offense, a charge couched in the language of the statute is insufficient. The facts that constitute the crime must be specifically set forth. *People v. Hughes*, 229 Ill. App. 3d 469, 592 N.E.2d 668 (1992).

To vest a court with jurisdiction in a criminal case, the information must charge the accused with a crime. *People v. Ikpoh*, 242 Ill. App. 3d 365, 609 N.E.2d 1025 (1993). When a charging instrument is challenged for the first time on appeal, the standard is whether the charging instrument apprised the accused of the precise offense charged with sufficient specificity so that he could prepare a defense and plead the resulting conviction as a bar to future prosecutions based on the same conduct. *People v. Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437 (1975). As a matter of policy, mere technical objections are to be disregarded and the charging instrument need only state the essential elements of the offense. *People v. Wilkenson*, 262 Ill. App. 3d 869, 635 N.E.2d 463 (1994).

Here, the charging instrument apprised the accused of the precise offense charged with sufficient specificity so that he could prepare a defense and plead the resulting conviction as a bar to future prosecutions based on the same conduct. Moreover, the State's evidence established the crime of theft in that it proved what it alleged in its information: that defendant "knowingly obtained and exerted unauthorized control over United States currency of a value in excess of three hundred dollars, but not more than ten thousand, the property of Eugene's Fireside Inn permanently of the use and benefit of said property, in violation of chapter 38, section 16—1—A(1)A of the Illinois Revised Statutes 1989 as amended."

Because mere technical objections are to be disregarded, and the charging instrument need only state the essential elements of the offense (*Wilkenson*, 262 Ill. App. 3d 869, 635 N.E.2d 463), the fact that the information on which defendant was tried was not signed by the State's Attorney or supported by affidavit does not require this court to reverse defendant's conviction.

■ Defendant further contends that he should receive a new trial because the court decided his guilt on the defense failure to rebut the State's *prima facie* case, thereby depriving him of the presumption of innocence and the right to have his guilt proved beyond a reasonable doubt. For the following reasons, we agree with defendant's contention and, on this basis alone, reverse and remand.

The due process clauses of both the United States and the Illinois Constitutions guarantee the accused that he will not be convicted on proof less than reasonable doubt of every fact necessary to constitute the crime with which he is charged. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. The complement to this guarantee is that the State bears the burden of proof and that the accused is presumed innocent. *Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993).

In this case, the record reflects that the court improperly placed on defendant a burden to rebut a *prima facie* case and thereby denied defendant his constitutionally guaranteed right to the presumption of innocence and proof beyond a reasonable doubt.

In response to defense counsel's closing argument, the court stated: "[a]nd all the defendant has to do is establish that there's reasonable doubt, reasonable doubt that in fact the person is not guilty of an offense. And any type—any kind of tie is broken by the law, and that tie is broken in favor of the defendant."

In addition, while entering the finding of guilt, the court stated that "the People's *prima facie* case that was established by the State had not been rebutted. It hadn't been rebutted. All I heard were unsupported theories without anything other than that."

The circuit court's statements are incorrect statements of the law and are inconsistent with the well-established principles that defendant is constitutionally entitled to the presumption of innocence and proof beyond a reasonable doubt when charged with a violation of criminal law. Because the court did not apply these fundamental principles to defendant's case as guaranteed by both the United States and Illinois constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), the judgment of the circuit court is reversed and remanded.

In view of our decision on this issue, we do not address defendant's claim that his theft conviction should be reversed because it is predicated on his having lawfully received funds from the Fousekis and Starobinsky functions and, therefore, he had not obtained unauthorized control over the funds as required for a theft conviction.

Reversed and remanded.

CERDA, P.J., and WOLFSON, J., concur.