2025 IL App (1st) 232472-U

No. 1-23-2472

Order filed September 12, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23TR40005866 |
| | ) | |
| TYSHON SCOTT, | ) | Honorable |
| | ) | Rouhy J. Shalabi, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In a bench trial for driving under the influence of alcohol, the trial court did not shift the burden of proof to defendant by mentioning in its summary of the evidence that defendant offered nothing to show that his medical condition affected his performance on standardized field sobriety tests.

¶ 2    Following a bench trial, defendant Tyshon Scott was found guilty of driving under the influence of alcohol (DUI) and improper lane usage, and sentenced to 18 months of conditional

discharge and one year of supervision, respectively. Scott appeals, contending that the trial court improperly shifted the burden of proof to the defense. We affirm.

¶ 3    After a March 31, 2023, traffic stop, Scott was issued three citations for improper lane usage (625 ILCS 5/11-709(a) (West 2020)) and a citation for DUI (*id*. § 11-501(a)(2)).

¶ 4    At trial, police officer James Schiller testified that he specialized in DUI enforcement and received annual refresher training on standardized field sobriety tests (SFSTs). On March 31, 2023, Schiller observed a vehicle weaving three times across lanes of traffic, including across the "double solid yellow" center line into the oncoming lane, and "braking erratically." Schiller curbed the vehicle and, in court, identified Scott as the driver. Scott "had bloodshot, glassy eyes," "spoke in a slurred, slow, mumbled speech," and "had a strong odor of alcoholic beverage upon his breath." Scott did not indicate he took medication or had "any sort of issue" that caused his conduct. When Scott exited the vehicle, "he was unsteady and had difficulty maintaining his balance."

¶ 5    Schiller then administered the SFSTs to Scott. Before each test, Schiller asked if Scott "had any sort of medical issue that would inhibit his ability to perform." Scott did not indicate any issue, nor did Schiller observe anything to indicate an issue. Schiller asked Scott if he drank any alcohol, and Scott denied drinking alcohol.

¶ 6    Schiller began with the horizontal gaze nystagmus (HGN) test. Scott exhibited "involuntary jerking of the eyes" and vertical gaze nystagmus, both of which could reflect alcohol consumption. Schiller then administered the walk-and-turn test. Scott "was unable to maintain his balance" and repeatedly "missed heel to toe." Schiller also administered the "one-legged stand test," where the subject counts 30 seconds while standing on one foot. Scott "swayed heavily side to side," put his foot down once, raised his arm to increase his balance, and counted to only 12 in

30 seconds. The latter indicated to Schiller that Scott had "an internally slowed clock \*\*\* which would coincide with a central nervous system depressant" such as alcohol.

¶ 7    Scott consented to a preliminary breath test but, despite Schiller instructing him to inhale deeply followed by a long "blow" into the device, he took "short, choppy breaths" on all three attempts resulting in an "insufficient sample." Throughout testing, Scott's "breath and person" smelled strongly of alcohol. Later, at the police station, Scott declined a breath sample.

¶ 8    Based on his experience and training, and his testing and observation of Scott, Schiller opined that Scott was under the influence of alcohol at the time in question.

¶ 9    On cross-examination, Schiller testified that he could not tell from the odor of alcohol how many alcoholic drinks a subject consumed. Scott was polite and cooperative. Before the HGN test, Schiller asked if Scott had any vision issues or eye abnormalities and performed a pre-check, observing Scott's pupils were of equal size, with "equal tracking in both eyes," and no resting nystagmus. Schiller maintained that he asked Scott before each test if he had any medical conditions that could affect the results, because Schiller would "ask those precursor questions prior to any DUI investigation." His report did not expressly state that he asked Scott about any medical conditions, but it was "in summation" rather than a verbatim account.

¶ 10    During closing argument, trial counsel argued, in part, that Schiller could not "say with certainty" that he inquired whether Scott had "issues with his back, legs, or inner ear," which is "crucial to ensure the validity" of the SFSTs. According to counsel, the tests are "difficult" even for individuals who are "sober" and "in good physical condition." Further, the evidence lacked "any video," and Schiller "did not specifically note in his report that he asked that question."

¶ 11    The trial court found Scott guilty on all charges. In doing so, the court recounted the evidence in detail, including Schiller's experience and training with DUI enforcement, his

observations of Scott's driving, appearance, and strong odor of alcohol, and Scott's performance on each SFST. The court noted that based on Scott's SFST performance, he was transported to the station where he refused a breathalyzer test.

¶ 12    The court then remarked that it:

"has not heard any evidence of any injuries that the Defendant may have had when asked or not asked about whether he had those injuries prior to taking those sobriety tests. The officer testified that that is his routine, that he would have asked that question. It was not in the report, but the Court has heard no other evidence on behalf of the Defense, that the Defendant had any type of *** physical impairment that would have precluded him from properly taking those sobriety tests."

¶ 13    The court then stated that it considered the "totality of the evidence" and was "convinced" that Scott consumed alcohol, "notwithstanding defendant's statements to the contrary," due to Scott swerving and crossing lines on three occasions, the "strong odor of alcohol," Scott's "consciousness of guilt" in refusing a breathalyzer at the police station, and "all other signs that [Scott] exhibited at the scene."

¶ 14    Scott filed a posttrial motion claiming that the State failed to prove that his faculties were impaired by alcohol, and that the court improperly shifted the burden of proof by considering the lack of evidence presented by the defense.

¶ 15    On December 19, 2023, the court heard and denied the posttrial motion. Trial counsel stood on her written motion, and the court stated, in part, that it "never shifted the burden to the defense." Rather, Scott exercised "the right to remain silent" and the defense had the opportunity to "present evidence to rebut or impeach, whether they choose to or not." The court sentenced Scott to 18

months' conditional discharge for DUI and a concurrent year's supervision for improper lane usage.

¶ 16    On appeal, Scott contends that the trial court improperly shifted the burden of proof to him by drawing a negative inference from his failure to present evidence that he had a physical disability or debilitating medical condition that might have affected his SFST performance. Scott argues that an error by the trial court itself is not forfeited by not objecting at trial, especially when he raised the issue in his posttrial motion. The State responds that Scott forfeited the claim and, alternatively, that the court's remarks did not constitute burden shifting. Scott replies that, if we deem the claim forfeited, we may consider it as second-prong plain error.

¶ 17    Generally, to preserve an issue for review, a defendant must object at trial and raise the issue in their posttrial motion. *People v. Jackson*, 2022 IL 127256, ¶ 15. A forfeited error may be considered under the plain error rule if a clear and obvious error occurred and either (1) the evidence was so closely balanced that the judgment may have resulted from the error, or (2) the error is so serious that the defendant was denied a fair trial. *People v. Yankaway*, 2025 IL 130207, ¶ 112. The first step is determining whether error occurred. *Id*. ¶¶ 112, 115.

¶ 18    A criminal defendant shall not be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the offense charged. *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 62. The State always bears the burden of proof, and a defendant need not present any evidence. *Id.* The trial court is presumed to know the law regarding the burden of proof and apply it properly, but that presumption may be rebutted by a record containing strong affirmative evidence to the contrary. *Id*. The trial court may accept or reject inferences based on the evidence and may comment on the implausibility of the defense theory of the case. *Id*. Whether the trial

court applied the correct legal standard is a question of law reviewed *de novo*. *People v. Robinson*, 2021 IL App (1st) 171371, ¶ 52.

¶ 19    Here, to argue that the court improperly shifted the burden of proof, Scott relies on the court's comments in finding him guilty. As noted, the court commented that it did not hear "evidence of any injuries that the Defendant may have had when asked or not asked about whether he had those injuries prior to taking those sobriety tests." The court added, however, that Schiller testified "that is his routine, that he would have asked that question" even if it was not documented "in the report." The court added that it "heard no other evidence on behalf of the Defense, that the Defendant had any type of *** physical impairment that would have precluded him from properly taking those sobriety tests." Scott maintains that these comments show the court drew a negative inference from his failure to present evidence of a physical disability or debilitating medical condition that might have affected his SFST performance.

¶ 20    The remark in question, considered in context, does not show that the court shifted the burden of proof to Scott. That is, the record does not contain strong affirmative evidence that the trial court improperly applied the burden of proof. See *Groebe*, 2019 IL App (1st) 180503, ¶ 62. Rather, after the court discussed the State's evidence in detail, it addressed Scott's cross-examination of Schiller and Scott's closing argument. Scott had argued no evidence showed that, before each SFST, Schiller asked whether Scott had any medical condition that could affect the tests. In summarizing the trial evidence, the court noted Schiller's testimony that he asked Scott before each test if he had any medical conditions that could affect the results of the SFST tests. The court credited Schiller's testimony even though his police report did not indicate he asked Scott about any medical conditions, and noted that Scott did not introduce any evidence on the point. See *id.* (trial court may comment on implausibility of the defense theory of the case).

¶ 21 The court's remark that Scott did not present evidence that he had any relevant condition was made in summarizing the evidence and addressing Scott's closing argument. Stated another way, the gist of the court's remarks was a finding that Scott did not have any conditions affecting the SFST, not that Scott had failed to present evidence that he had such a condition. Also, in denying Scott's posttrial motion, the court expressly stated that it "never shifted the burden to the defense to make them prove or disprove their case" and that Scott certainly could "choose to or not" present evidence.

¶ 22 The cases Scott relies upon are distinguishable. In *People v. Devine*, 295 Ill. App. 3d 537, 544 (1998), this court found reversible error where the trial court remarked "all the defendant has to do is establish that there's reasonable doubt" and "the People's *prima facie* case *** has not been rebutted." The court thus made "incorrect statements of the law *** inconsistent with the well-established principles that defendant is constitutionally entitled to the presumption of innocence and proof beyond a reasonable doubt." *Id*. In *People v. Virella*, 256 Ill. App. 3d 635, 638 (1993), this court found reversible error where the trial court "recited the wrong standard of proof four times" and "repeatedly referred to the clear and convincing standard of proof, instead of the correct standard of beyond a reasonable doubt." Our rulings in *Devine* and *Virella* were based on express misstatements of the burden of proof which constituted strong affirmative evidence that the trial court did not properly apply the burden of proof. As explained, in this case, when the court's remarks are taken in context, no such affirmative misstatement occurred. Hence, because the trial court did not err, there can be no plain error and Scott has forfeited the issue for review.

¶ 23 Accordingly, the judgment of the circuit court is affirmed.

¶ 24 Affirmed.