THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THERESA ROGERS, Defendant-Appellant.

First District (2nd Division)    No. 80-2700

Opinion filed February 2, 1982.

Stanley L. Hill, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, J. Mark Lukanich, and Michael J. Kelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant was charged by information with aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)) and cruelty to children (Ill. Rev.

Stat. 1979, ch. 23, par. 2368). After a bench trial, defendant was found guilty of endangering the life or health of a child, a misdemeanor (Ill. Rev. Stat. 1979, ch. 23, par. 2354), and sentenced to one year probation.

Three grounds for reversal are presented by defendant: first, that she was not proved guilty beyond a reasonable doubt; second, that the finding of the trial court amounted to an improper inconsistent verdict; and third, that the statute under which she was convicted is unconstitutional in that it fails to provide adequate notice of the conduct it proscribes.

Defendant Theresa Rogers is the mother of Marinda Rogers, the victim. Marinda was six months old on the date of the incident. Marinda's father is Byron Hampton, who is not married to defendant. At the time of the incident, defendant, Marinda, and Byron lived with Byron's parents, Mr. and Mrs. John Hampton, Sr.

Byron Hampton testified that he went to work on the day of the incident at 4 p.m., leaving defendant and the baby at home. He noticed no injuries on the baby. Defendant was mixing pina coladas when he left. Byron returned home on a break at 8:30 p.m. Defendant was drunk and smoking a cigarette. The baby had a cigarette burn on her left eyelid. Byron didn't recall defendant's answer to his question of how the burn was caused. He went back to work.

Returning home around 11:30 p.m., Byron found defendant lying in his parents' bed, and Marinda in his bed. The baby had sustained multiple injuries. Her face was bruised, her arms had scratches, and her right leg appeared broken. When he saw the baby, Byron went into his parents' room and kicked defendant in the head, knocking her hearing aid out. He then hit her side. Byron had called his father and brother when he saw the baby, and they arrived home. Defendant fled the house and returned with the police, and they all went to the hospital with the baby. Byron admitted on cross-examination that he had a temper, and that he once put his fist through a wall in the house. He also stated that he has never seen defendant hit the baby.

John Hampton testified that he was Byron's father. He was at work the evening of the incident, where he received a call from Byron at 11:45 p.m. He went home and saw the baby all bruised. Defendant was drunk and incoherent, and half a fifth of Crown Royal whiskey was missing from his liquor supply. The half empty bottle was on the kitchen table. When shown People's exhibits Nos. 1-5, photos of Marinda taken at the hospital, he stated that the full extent of her bruises was not visible in the pictures. On cross-examination, he conceded that two years ago, he called the police and charged defendant with breaking into his house.

Police officer Gregory Ramirez testified that he responded to a child-abuse complaint at Michael Reese Hospital. In his initial conversation

with defendant, she stated that she didn't know how Marinda's injuries were caused. Later, she told a police investigator that she left the baby with a sitter and found her in that condition when she picked her up. On cross-examination, Ramirez stated that although defendant appeared intoxicated, she didn't smell of alcohol.

Janice Yokley testified that she was a licensed day care provider, and that she cared for Marinda for four days, February 11-14. The baby had no marks the last time she saw her.

Carlos Alberto Flores testified that he was a third-year pediatric resident at Michael Reese Hospital, and that he examined Marinda. In sum, the baby had the following injuries: facial bruises, random scratches, fractured arm, fractured femur, fractured skull, and a cigarette burn on her eyelid. Marinda was placed in traction to treat the femur fracture. Dr. Flores stated that the femur was the hardest bone to break in an infant.

Defendant testifed she was hard of hearing and had to read lips when not wearing her hearing aid; that Byron was very jealous and beat her up several times; that she called the police once and had him charged with battery; that on the day of the incident, she was out on a job interview in the morning and Byron was at home with Marinda; and that he was drinking Crown Royal.

Defendant further testified that after Byron left for work, she gave the baby a warm bath. The doctor had instructed her to do so to bring the baby's fever down. The telephone rang while the baby was in the bath, so defendant picked up the baby and went through the kitchen to answer the phone. In the kitchen, the baby jumped from her arms, fell to the kitchen table, and then fell to the floor. Defendant put a cold rag on the baby's head, fed her, and then put her to sleep in Byron's bed. Defendant then had a can of Champale and lay down in the other bed. She awoke to Byron's kick on the head. Her hearing aid was knocked out and broken.

Defendant explained her initial story to the police about the babysitter as a product of her fear of being thought a bad mother for dropping the child.

In rebuttal, the State introduced a stipulation to the testimony of Dr. Flores. His opinion was that it was unlikely that the skull and arm fractures occurred in the fall described by defendant, and that the leg fracture could not have occurred in that fall.

I

■■ We first consider defendant's claim that she was not proved guilty beyond a reasonable doubt. This argument is premised on the circumstantial nature of the State's case; no eyewitnesses to the beating of Marinda Rogers were produced. When a conviction is based on circumstantial

evidence, the facts proved must not only be consistent with the guilt of the accused but inconsistent with any reasonable hypothesis of innocence. (*People v. Gilbert* (1978), 58 Ill. App. 3d 387, 392, 374 N.E.2d 739.) Defendant suggests that the evidence is consistent with the theory that Byron Hampton beat Marinda, and with the theory that the injuries were accidentally inflicted. We disagree.

The trial was a question of credibility. The evidence is clear that only defendant and Byron were involved with the baby. The trial court clearly believed Byron's testimony that he did not commit the crime and disbelieved defendant's testimony that she did not commit the crime. Defendant presents no basis for this court to doubt the trial court's determination of credibility. We do not believe that the hypothesis that Byron Hampton committed the crime is reasonable.

The testimony of Dr. Flores established that the injuries could not have occurred in the fall as described by defendant. Although defendant argues that this testimony does not preclude the injury occurring in another accident, there is no evidence in the record of any other accident. Where an accused elects to justify her connection with the crime, she "must tell a reasonable story or be judged by its improbabilities." (*People v. Gilbert* (1978), 58 Ill. App. 3d 387, 392.) We do not believe that the hypothesis that the injuries were accidentally inflicted is reasonable.

■■ In our opinion, based upon the record, defendant was clearly proved guilty beyond a reasonable doubt.

## II

Next we consider defendant's contention that the finding of the trial court was an impermissible inconsistent verdict. "Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist." *People v. Murray* (1975), 34 Ill. App. 3d 521, 531, 340 N.E.2d 186.

Defendant relies on *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658, and *People v. Pearson* (1973), 16 Ill. App. 3d 543, 306 N.E.2d 539, in support of her argument that a legally inconsistent verdict is not permitted. She contends that her acquittal on the felony charges of aggravated battery and cruelty to children and her conviction on the misdemeanor charge of endangering the life of a child are inconsistent.

The fallacy in defendant's argument is that there was no acquittal of the felony charges. She was found guilty of endangering the life of a child by the trial court. No finding was entered on the two charges contained in

the information, aggravated battery and cruelty to children. Specifically, the trial court stated:

> "Of course, there is no doubt that this child sustained very painful injuries, required long hospitalization * * *;
>
> Accordingly, there will be a finding of guilty of the lesser included offense of endangering the life of a child * * *."

■■ We believe that the finding of the trial court was not inconsistent because there was only one finding: guilty of endangering the life. There was no finding on the other two offenses. If there was only one finding, there is nothing with which it can be inconsistent. See, *e.g., People v. Chisum* (1975), 30 Ill. App. 3d 546, 548, 333 N.E.2d 546, *appeal denied* (1975), 61 Ill. 2d 598.

We recognize, of course, the cases which state that where a finding of guilty is entered on a lesser included charge and no finding is entered on the greater charge, there is an *implied* acquittal on the greater charge. (*People v. Roberts* (1976), 36 Ill. App. 3d 811, 818, 345 N.E.2d 132, *appeal denied* (1976), 63 Ill. 2d 561; see also *People v. Thompson* (1973), 11 Ill. App. 3d 752, 758, 297 N.E.2d 592.) These cases, however, are in the context of double jeopardy. The usual situation is that a conviction on the lesser offense is reversed due to trial errors, and the reviewing court states that there cannot be a retrial on the greater offense. This is consistent with the double jeopardy principle that conviction of a lesser included offense bars prosecution on the greater offense. *Illinois v. Vitale* (1980), 447 U.S. 410, 420, 65 L. Ed. 2d 228, 238, 100 S. Ct. 2260, 2267; *People v. Gray* (1977), 69 Ill. 2d 44, 49-52, 370 N.E.2d 797, *cert. denied* (1978), 435 U.S. 1013, 56 L. Ed. 2d 395, 98 S. Ct. 1887.

■■ The instant case does not arise in a double jeopardy context. The question here is whether the finding of the trial court was inconsistent. Inconsistency occurs when a verdict on one count is premised on the existence of an element of the offense and a verdict on another count is premised on the nonexistence of the same element. An inconsistent finding implies that the trial court was confused, and this requires the conclusion that the defendant was not proved guilty beyond a reasonable doubt. *People v. Murray*, 34 Ill. App. 3d 521, 532.

The experienced and learned trial court was not confused in the instant case. The only inconsistency is that which is implied for purposes of double jeopardy. Since this is not a double jeopardy case, we will not imply an acquittal on the charges of aggravated battery and cruelty to children. We thus reject defendant's argument.

### III

Defendant contends that the statute under which she was convicted is unconstitutional in that it does not provide adequate notice of the conduct

it proscribes. The identical argument was rejected by the supreme court in *People v. Vandiver* (1971), 51 Ill. 2d 525, 283 N.E.2d 681. We, therefore, must also reject this contention.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.