THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN BERG, Defendant-Appellant.

Third District   No. 3—87—0268

Opinion filed June 24, 1988.

Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a jury trial the defendant, Kevin Berg, was found guilty in the circuit court of Rock Island County of the second count of a two-count complaint. He was sentenced to 364 days' incarceration.

On appeal, Berg contends: (1) the trial court erred in allowing the State to amend the complaint to correct a fundamental defect on the first day of trial; (2) the complaint failed to set forth the elements of the offense; and (3) he was not found guilty beyond a reasonable doubt.

Berg lived with Kimberly Baker and her minor child from January 1986 through October or November of 1986. He did not stay with the child continuously throughout the day. Testimony showed that Berg would clothe and feed the minor, play with her, give her presents, discipline her, tell her not to do something if it might lead to her being injured, take her to visit her grandmother, and would take Kimberly and the minor out to eat.

On October 8, 1986, an acquaintance of Kimberly's, when visiting, noticed some bruises on the minor's face. This acquaintance asked if the minor could stay with him for a while and Kimberly assented. He reported the bruises to Kimberly's mother and the Bettendorf police were notified. The minor was taken to the hospital where she was examined by Dr. Barry Barudin. Dr. Barudin testified that he noticed multiple bruises on the minor's back and face, disruption to her pri-

mary teeth, broken nails on her big toes and multiple breaks in the hair shafts of her scalp. X rays showed a fractured rib. The doctor stated that the bruises were sustained several days prior to October 8, but probably not at the same time. The rib fracture was deemed to have occurred at least a week prior to October 8 and was probably caused by "some external force," such as falling down a flight of stairs. The doctor rendered no medical treatment, the tests conducted on the bruises proved negative, and the child was kept overnight for observation.

Berg and the minor's mother were identically charged in separate two-count indictments. Count I alleged that they had injured the child, and count II alleged that they had endangered the child's health by failing to obtain prompt medical attention. Both counts were brought pursuant to the child-endangerment statute (Ill. Rev. Stat. 1985, ch. 23, par. 2354).

Berg testified that the bruise on the side of the minor's face occurred when he and the minor's mother were playing pool and the mother accidentally hit the minor with a pool cue. Ice was applied to the area. The remaining bruises were caused by a fall down some stairs and bumping into the pool table and a coffee table. Berg also stated that the minor had received some scratches and bruises while playing with the cat. Berg knew that the child's toe nails had fallen off prior to October 8, but he did not know the cause. He testified that clumps of the minor's hair would fall out when her mother brushed it. He had washed the minor's hair a few times but did not notice anything unusual. Berg had no information regarding the cracked rib and her teeth appeared no different on October 8 than when he first moved in. He stated that the minor was Kimberly's child and that he left her care up to her.

Other witnesses had observed the child run into objects and walls while observing her. There was also testimony received that the minor was a clumsy child. None of the prosecution witnesses testified that they either saw Berg injure the minor or otherwise knew that he had injured her. The only testimony regarding Berg's possible involvement came from two witnesses, one who stated she did not notice any bruises prior to Berg moving in with Kimberly, and the other who testified that he noticed some bruises when he baby-sat.

The jury returned verdicts of not guilty on count I and guilty on count II. Berg presented his motion for a new trial and in arrest of judgment prior to sentencing. He argued that the complaint failed to state a cause of action and that he was not found guilty beyond a reasonable doubt.

■ The first issue we address is whether the court erred in permitting the State to amend its complaint on the first day of trial. As originally drafted, count II of the complaint alleged that the defendant "wilfully caused the health of such child to be injured in that prompt medical treatment was not obtained for the child's injuries." On the first day of trial, that count was amended by substituting the word "endangered" for the word "injured" in the language of the complaint. Berg contends that this constituted a fundamental change and should not have been permitted. The State contends that this amounted to only a formal defect.

It is well established that formal defects in a complaint may be corrected by amendment at any time. (Ill. Rev. Stat. 1985, ch. 38, par. 111—5; *People v. Coleman* (1971), 49 Ill. 2d 565, 276 N.E.2d 721.) The child-endangerment statute states:

> "It shall be unlawful for any person having the care or custody of any child, wilfully to cause or permit the life of such child to be endangered, or the health of such child to be injured, or wilfully cause or permit such child to be placed in such a situation that its life or health may be endangered." (Ill. Rev. Stat. 1985, ch. 23, par. 2354.)

Therefore, the question, in this case, is whether the subsequent amendment to count II of the complaint constituted a formal defect which was able to be amended on the first day of trial or whether it was a fundamental defect which changed the offense charged.

There is no question that this statute is constitutional and that it provides adequate notice of the conduct proscribed. (*People v. Rogers* (1982), 104 Ill. App. 3d 326, 432 N.E.2d 975.) Further, four weeks prior to trial, Berg filed his motion for a bill of particulars. Without setting out the text of the motion in its entirety, let it suffice to say that he only contested the allegation that he had care or custody of the child and raised no objection to the language employed, nor did he aver that he failed to understand the charge. Additionally, the common, everyday meanings of the two words would not constitute a fundamental change in the charge when read in the context of the statute. Therefore, we hold that the defect was formal in nature and susceptible to correction on the first day of trial.

■ We also have determined that the complaint sufficiently set forth the elements of the offense. It is clear from a reading of the complaint, in its original or amended form, that Berg was being charged with endangering the minor's health by failing to obtain prompt medical treatment for her injuries while the minor was under his care or in his custody. This brings the offense charged within the purview of the

statute and adequately alleged the elements of the offense.

■ Berg's next contention is that he was not found guilty beyond a reasonable doubt. A reviewing court may not substitute its judgment for the trier of fact's on questions involving weight of evidence or the credibility of witnesses unless the evidence is so improbable as to raise a reasonable doubt as to guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) In such a case, the court should not hesitate to reverse the conviction. (*People v. Scott* (1982), 108 Ill. App. 3d 607, 439 N.E.2d 130.) The present case presents just that situation.

■ The prosecutor admitted in his opening statement that there was no direct evidence linking Berg with the injuries sustained by the minor. It has also been recognized that, under Illinois law, the parent has the primary rights and duties regarding the care, education, custody, and control of the child. (*Dr. Franklin Perkins School v. Freeman* (7th Cir. 1984), 741 F.2d 1503.) Recognizing the primary responsibility of a natural parent does not mean that an unrelated person may not also have some responsibilities incident to the care and custody of a child. Such duties may be regarded as derived from the primary custodian, *i.e.*, the natural parent, or arise from the nature of the circumstances. If immediate or emergency medical attention is required from a child's custodian, it should not matter that such custodian is not the primary care provider or for that matter a legally designated surrogate.

■ When we consider the defendant's relation with the child's mother and the circumstances existing at or about the time the child was taken to the hospital, we find there is a failure of evidence showing the defendant endangered the child's health by not obtaining medical attention. According to the medical evidence, no treatment was required or appropriate and there was no showing that the child's health was endangered or adversely affected by the failure to seek medical attention earlier.

We conclude the defendant was not proved guilty of the charge beyond a reasonable doubt and consequently his conviction and sentence must be reversed. In view of the position we have taken it is unnecessary to consider other assignments of error.

For the foregoing reasons the judgment of the circuit court of Rock Island County is reversed.

Reversed.

HEIPLE and WOMBACHER, JJ., concur.