THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BARBARA WILKENSON, Defendant-Appellant.

First District (3rd Division)    No. 1—92—3177

Opinion filed March 23, 1994.

Michael Wilke, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Sang Won Shim, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Barbara Wilkenson, was found guilty of violating section 4 of the Wrongs to Children Act (Ill. Rev. Stat. 1991, ch. 23, par. 2354 (now codified as 720 ILCS 150/4 (West 1992))), commonly known as the child endangerment statute. She was sentenced to one year's probation.

On appeal, defendant asserts that (1) her motion to dismiss the complaint at the close of the State's case should have been granted; (2) her motion for a directed finding should have been granted; (3)

she was not proven guilty beyond a reasonable doubt; and (4) the child endangerment statute is unconstitutional. We affirm.

On September 3, 1991, defendant was arrested in the backyard of her home at 1846 North Lincoln Park West in Chicago. Chicago police officer Thomas Fuller testified that he received a radio call around 11:40 p.m. of a woman screaming for help. After arriving at the scene, Fuller saw defendant standing naked in the backyard of a condominium building. She was holding a butter knife to the throat of a baby. The knife had a three- to four-inch blade.

Fuller stated that he ordered defendant, who was screaming the Lord's Prayer and "I have to kill this baby," to throw down the knife, but she continued to hold the knife and scream. After being ordered numerous times to drop the knife, defendant finally dropped the knife. At that point, Fuller and police officer Debra Maurer grabbed defendant and another police officer grabbed the baby. When the baby was taken, a steel vice grip and a wooden stick with metal studs fell from defendant's arms.

On cross-examination, Fuller admitted that his arrest report did not state that defendant said that she had to kill the baby. Instead, Fuller's report stated that defendant was reciting parts of the Lord's Prayer and yelling "help me"; threw the knife down when she was told to do so; and threw other objects into the alley.

Officer Maurer testified that she responded to a radio call about a woman screaming in an alley sometime after 11 p.m. on September 3, 1991. When Maurer arrived at 1846 North Lincoln Park West, she saw defendant, who was naked, holding a knife to the neck of a baby. As defendant was screaming the Lord's Prayer, "Jesus Christ," and "Dan, I am doing this for you" over and over, Maurer told her to put down the knife. When Maurer's partner grabbed defendant and another police officer grabbed the baby, Maurer pulled defendant's hand down to handcuff her. At that time, defendant dropped the knife.

As defendant was being subdued, she was "still ranting and raving and saying the Lord's Prayer and using her legs to get back and fighting the whole time." According to Maurer, defendant was also yelling about killing the baby. Maurer testified that she did not notice any injuries to the child.

Chicago police sergeant Curtis Mayo testified that he arrived at the scene after 11:30 p.m. on September 3, 1991. He saw Officer Maurer attempting to subdue a naked woman. Defendant was irrational, screaming, hollering the Lord's Prayer, asking for help, and saying, "Dan, I'm doing this for you." After examining the baby, who was seven months old at the time of the incident, Sergeant Mayo observed that the child had not been bruised.

After the State rested, the trial court denied defendant's motions to dismiss the complaint and for a directed finding.

Defendant then testified that she was at home with her daughter, Estelle Wilkenson, during the evening of September 3, 1991. As she was preparing a bath for herself and her daughter, who was seven months old at the time, defendant heard noises. Thinking that someone was trying to break into her apartment, she grabbed her daughter and a butter knife, then ran out of the apartment yelling for help.

According to defendant, she stood naked in her backyard, clutching her daughter and yelling for help while she waited for the police to arrive. When her daughter was taken from her arms, she became hysterical because, in the confusion, she did not know who had taken her daughter. Defendant testified that she was hysterical and did not know what was happening, but did not say that she was going to kill her baby. According to defendant, the child never had any kind of injury or bruise.

On cross-examination, defendant denied having had a pair of pliers or a piece of wood under her arm during the incident. She stated that she put down the knife when asked to do so and told the police about the possible burglary.

■ On appeal, defendant asserts that her motion to dismiss the complaint at the close of the State's case and her motion in arrest of judgment should have been granted.

The body of the complaint charged, in pertinent part:

"[I]n that she having the care of a child, Estelle Wilkenson, wilfully caused the life of said child to be endangered, by holding a knife to the throat of said child."

Defendant argues that the offense named in the complaint, "Endangering the Health of a Child," was contradictory to the body of the complaint, which charged her with wilfully causing the "life of said child to be endangered." Thus, defendant contends that it was impossible for her to know with which provision she was being charged.

Furthermore, defendant maintains that the complaint does not state a cause of action because it merely alleged that she held a knife to the throat of a child without explaining how holding a knife in such a manner endangered her child's life or health. If the language is held sufficient, defendant cautions, "then medical doctors about to perform surgery on a child could be charged and convicted" under this statute.

We reject defendant's arguments. When the sufficiency of a charging instrument is challenged in a motion to dismiss or a motion

in arrest of judgment, the complaint must comply with section 111—3 of the Code of Criminal Procedure of 1963 (see *People v. Finley* (1991), 209 Ill. App. 3d 968, 973, 568 N.E.2d 412), which requires that a charge be in writing, state the name of the offense, cite the statutory provision alleged to have been violated, set forth the nature and elements of the offense, state the date and county of the offense, and state the name of the accused. (*People v. Wilder* (1991), 219 Ill. App. 3d 437, 438, 579 N.E.2d 948; Ill. Rev. Stat. 1991, ch. 38, par. 111—3 (now codified as 725 ILCS 5/111—3 (West 1992)).) A misdemeanor complaint will be upheld if the requirements of section 111—3 are sufficiently set forth to achieve the complaint's purpose (*People v. Phelan* (1981), 99 Ill. App. 3d 925, 929, 426 N.E.2d 925), which is to advise the defendant of the nature of the accusation so that she can fully prepare her defense and plead the judgment as a bar in a subsequent prosecution for the same offense. (*People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 648, 378 N.E.2d 1200.) This court's policy is to disregard mere technical objections and require only that a charging instrument state the essential elements of the offense. *People v. Cazares* (1980), 86 Ill. App. 3d 612, 615, 408 N.E.2d 258.

To determine whether a complaint is sufficient, a court considers the plain and ordinary meaning of its language as read and interpreted by a reasonable person. (*People v. Banks* (1979), 75 Ill. 2d 383, 392-93, 388 N.E.2d 1244.) If the statute alleged to have been violated sufficiently defines the offense, then the complaint is adequate if it states the offense in the statute's terms and language or so plainly that the defendant is apprised of the charge against her. *Wilder*, 219 Ill. App. 3d at 441.

Section 4, entitled "Endangering life or health," provides:

> "It shall be unlawful for any person having the care or custody of any child, wilfully to cause or permit the life of such child to be endangered, or the health of such child to be injured, or wilfully cause or permit such child to be placed in such a situation that its life or health may be endangered." Ill. Rev. Stat. 1991, ch. 23, par. 2354 (now codified as 720 ILCS 150/4 (West 1992)).

We conclude that the complaint was sufficient to inform defendant of the conduct and charges for which she had to prepare a defense. Defendant was charged under section 4 (Ill. Rev. Stat. 1991, ch. 23, par. 2354 (now codified as 720 ILCS 150/4 (West 1992))), which is named "Endangering life or health." The complaint stated the name of the offense and the body of the complaint set forth the nature and elements of the offense, cited the statutory provision alleged to have been violated, stated the date and county of the offense, and stated the name of the accused. As a result, it was adequate to enable

defendant to fully prepare her defense and to plead the judgment as a bar in a subsequent prosecution for the same offense.

■ Defendant's next contention is that her motion for a directed finding should have been granted because the evidence presented in the State's case in chief was insufficient to sustain the charge. Defendant maintains that the State did not present evidence of the child's age or that defendant had the care of the child.

Defendant is mistaken. Sergeant Mayo testified that the child was seven months old at the time of the incident. Since this statute involves children under the age of 14 years old (*People v. Vandiver* (1971), 51 Ill. 2d 525, 528, 283 N.E.2d 681), Mayo's testimony was sufficient to show that the baby's age was under 14 years old. In addition, there was evidence presented that defendant had the care of the child at the time of the incident.

■ Defendant next contends that merely holding a butter knife to the child did not endanger her life since the statute requires an actual injury. In support of her argument, defendant cites *Vandiver* (51 Ill. 2d 525, 283 N.E.2d 681), *People v. Berg* (1988), 171 Ill. App. 3d 316, 525 N.E.2d 573, *People v. Moore* (1984), 121 Ill. App. 3d 570, 459 N.E.2d 1120, *People v. Rogers* (1982), 104 Ill. App. 3d 326, 432 N.E.2d 975, and *In re Holmes* (1975), 28 Ill. App. 3d 104, 328 N.E.2d 35.

Defendant is mistaken. The only case that specifically discusses the requirement of an injury is *Vandiver* (51 Ill. 2d 525, 283 N.E.2d 681), which involved an allegation that the health of a child was injured. The Illinois Supreme Court considered the definitions of "health" and "injury" together because the legislature had used them in the same phrase. Since "health" includes freedom from physical injury, the court concluded that the statute requires the actual infliction of personal injury on the child in order to be convicted of injuring the health of the child.

*Vandiver* is not applicable because it considers only that part of the statute concerning "injuring the health" of the child, not that part of the statute regarding "endangering the life" of the child. Even though an actual injury is required to convict for injuring the health of a child, to convict for endangering the life of a child, the person caring for the child must wilfully cause that child's life to be placed in danger of probable harm.

Webster's Third New International Dictionary 748, 1034, 1164 (1986) defines "endanger" as "bring[ing] into danger or peril of probable harm." "Harm" is "physical or mental damage." In contrast, "injury" is defined as "an act that damages, harms or hurts." Thus, endangering the life of a child involves placing the child's life into danger of probable physical or mental damage whereas injuring the

health of a child involves actually damaging, harming, or hurting that child's health.

■ Next, defendant asserts that she was not proven guilty beyond a reasonable doubt. She argues that the testimony of the three police officers contained inconsistencies with the arrest report and that her explanation was coherent and rational.

Any contradictions that occurred in the testimony go to credibility. It is the trier of fact who is responsible for determining the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43, 535 N.E.2d 889.) Since the trial court heard all the testimony and had the opportunity to observe the demeanor of all the witnesses, we hold that defendant was proven guilty beyond a reasonable doubt.

■ Finally, defendant asserts that this statute is so vague and uncertain that it fails to give constitutionally adequate notice of the conduct it would proscribe.

This statute has been upheld as being constitutional on its face in *Berg* (171 Ill. App. 3d at 319) and *Rogers* (104 Ill. App. 3d at 330-31), where the statute was declared constitutional because it provides adequate notice of the conduct proscribed. We agree with those decisions. If a statute is challenged on the ground that it is unconstitutionally vague on its face, it will be held unconstitutional for vagueness only if it is incapable of any valid application. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982), 455 U.S. 489, 497, 71 L. Ed. 2d 362, 371, 102 S. Ct. 1186, 1193; *People v. Wawczak* (1985), 109 Ill. 2d 244, 249, 486 N.E.2d 911.

Defendant also contends that this statute is unconstitutional as applied to the facts of this case. Defendant maintains that *Vandiver* is not applicable because the facts of this case fall within those situations that the *Vandiver* court considered as less clear.

In *Vandiver* (51 Ill. 2d at 530), the court found the statute constitutional as applied because the infliction of physical injury on the child in that case was clearly within the statute. The court, however, declined to conjecture as to the statute's applications to less clear situations. *Vandiver*, 51 Ill. 2d at 530.

As in *Vandiver*, we reject defendant's contention that a parent waving a belt, fist, or open hand at his child would be guilty of a crime. Since the hypothetical situation does not involve the same type of conduct as in this case, it should not be considered in deciding the statute's constitutionality as applied in this case.

"[T]he fact that there may be borderline cases wherein a degree of uncertainty exists as to the applicability of a statute does not

render the statute unconstitutional as to conduct about which no uncertainty exists." *Vandiver*, 51 Ill. 2d at 530.

In this case, defendant held a knife to the throat of her child while yelling that she was going to kill the child. In addition, she had a pair of pliers and a metal-studded wooden stick in her arms. That type of conduct is clearly proscribed in the statute. Thus, it is constitutional as applied.

While we might question the necessity of criminal prosecution in a case of this nature, we recognize that the statute does assess a Class 4 felony conviction for a subsequent conviction. (Ill. Rev. Stat. 1991, ch. 23, par. 2355 (now codified as 720 ILCS 150/5 (West 1992).) The purpose of this statute is to protect children from harm or potential harm by those who are caring for them, including their parents. Therefore, based on the foregoing, we affirm the circuit court's judgment.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.