# Illinois Official Reports

## Appellate Court

---

### *People v. Rudell*, 2017 IL App (1st) 152772

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SARA RUDELL, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-2772 |
| Filed | April 25, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-217592; the Hon. Clarence Lewis Burch, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jason R. Epstein, of Law Offices of Jason R. Epstein, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Jon Walters, and David J. Welch, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pierce and Mason concurred in the judgment and opinion. |

¶ 1    Sara Rudell challenges her conviction for child endangerment after leaving her six-month-old baby alone in a car. On appeal, she argues (i) the insufficiency of the evidence undermines her conviction, (ii) her trial counsel should have been allowed to move to suppress her statements to police after trial testimony had begun, (iii) the trial court should have granted her a new trial based on newly discovered evidence, and (iv) cumulative error requires reversal.

¶ 2    We reject each of these claims and affirm. There was sufficient evidence to support Rudell's conviction, based on the trial court's evaluation of witness credibility. The trial court did not abuse its discretion in refusing to hear a midtrial suppression motion, considering the details supporting that motion should have been recognized before trial. Nor did the trial court abuse its discretion in denying the motion for a new trial because Rudell's "newly discovered evidence" could have been discovered before trial, was not material, and was not sufficiently conclusive. And as we find no error, we reject her claim of cumulative error.

¶ 3                                      BACKGROUND

¶ 4    Rudell was charged with endangering the life of a child and public intoxication. She elected to waive a jury trial.

¶ 5    Chicago police officer Kevin Zia testified that on September 12, 2014, he was on patrol around 1 a.m. when a person flagged him down, telling him that a child had been left alone inside a car. Officer Zia went to the car (on the 1600 block of West Erie Street in Chicago) and found a roughly six-month-old baby in a baby seat in the rear of the car. The baby, who was crying, had on a onesie with no pants, socks, or shoes. The car was not running, and the rear window was open. Officer Zia contacted the fire department, and about three minutes passed between Officer Zia finding the baby and the baby being removed from the car.

¶ 6    Officer Zia then ran the car's license plate number through the police database and found it registered to Sara Rudell at an address about two blocks away. Officer Zia went to that address and found Rudell sitting on the curb with an adult male. Zia smelled a strong odor of alcohol on Rudell's breath. He asked Rudell if she knew where her child was. Rudell responded that she had taken the baby to a party that evening, had drunk alcohol at the party, and had driven back but could not remember how her car came to be parked on West Erie Street and forgot that her child was inside. After speaking with Rudell, Officer Zia placed her in custody.

¶ 7    On cross-examination, Zia testified that when he first saw Rudell sitting on the curb, he asked her if she was Sara Rudell because she was the primary suspect: Zia knew that the car was registered to her and that the baby was in the car, so Rudell was not free to leave.

¶ 8    Rudell's attorney then asked for leave to file a motion to suppress Rudell's statements to police because she had not been Mirandized at that point. The police reports (provided in discovery) summarized Rudell's statements to police: she had gone to a friend's house and gotten drunk; after the party, Rudell parked her car and walked home but had no memory of walking home and had forgotten that her baby was in the car. The report stated that Rudell "was then placed in custody and transported" and noted that Rudell's breath smelled strongly of alcohol. Her attorney argued that the police reports, stating that Rudell had been placed in custody after being questioned by police, conflicted with Officer Zia's testimony that Rudell

was not free to leave (and was therefore in custody) before police questioned her. The trial court denied leave to file this motion, stating that Rudell's attorney should have realized from reading the report before trial that Rudell had not been Mirandized.

¶ 9    Zia further testified that Rudell appeared extremely intoxicated, a 10 on a scale of 1 to 10. Rudell had stated she drove the car home, but Zia admitted that this statement was not in his police report. And the report also did not recite that the man sitting on the curb with Rudell was Joseph Rothenbuehler, Rudell's boyfriend, and Rothenbuehler told Zia that he had been inside the house and not out with Rudell.

¶ 10    Chicago police officer Calicdan, also on patrol that night, testified that when the police found Rudell, she was arguing with Rothenbuehler and crying. Rudell gave off a strong odor of alcohol. She told police that after drinking at a friend's house, she drove home but could not remember where she parked. She said her baby was in the car and she had gone to get Rothenbuehler so he could help her find the car. On cross-examination, Officer Calicdan admitted the police reports did not include Rudell's statement that she had sought out Rothenbuehler to help her.

¶ 11    At the conclusion of the State's case, Rudell's attorney moved for a directed verdict. The trial court inquired about the child endangerment statute, which provides, "a trier of fact may infer that a child 6 years of age or younger is unattended if that child is left in a motor vehicle for more than 10 minutes." The trial court referred to this as a "permissive presumption": "if we have an inference which you just admitted to, a child in a car under the age of six, an inference goes unrebutted, unrebutted becomes a presumption." Rudell's attorney argued that he was not contesting that a crime had occurred, only who had committed it. The trial court denied the motion for a directed verdict.

¶ 12    Jamie Griffith, a Cook County sheriff's deputy, testified in Rudell's defense that on that evening, Rudell and Rothenbuehler had come to Griffith's home for 45 to 60 minutes with their baby and dog. They left around midnight. Rudell was extremely inebriated and could barely walk, so Griffith helped her to her car and put her in the passenger seat. Rothenbuehler was driving and said they were going home, a 5- to 10-minute ride.

¶ 13    Rothenbuehler, the baby's father, testified that on that evening he and Rudell had been at Griffith's home with their baby and dog. Rudell was intoxicated, so much so that it "was a little surprising to me." Rudell did not drive the car home. It took about five minutes for them to get home, and when they did, Rudell got out of the car first. Rothenbuehler then took some groceries out of the car.

¶ 14    On cross-examination, Rothenbuehler testified that he and Rudell had been at a barbecue before going to Griffith's house and Rothenbuehler drank three beers. He did not remember exactly how much time they spent at Griffith's home but thought they left before midnight. He put the baby in the car while Griffith helped Rudell in. They went directly home and parked about a block from their home. Rothenbuehler and Rudell argued, and Rudell got out of the car and took the dog. Rothenbuehler took the groceries to the front porch and returned to the car because he realized that Rudell did not have the baby. Rothenbuehler started to panic and was about to call the police when the police arrived.

¶ 15    On redirect examination, Rothenbuehler testified that he had assumed that Rudell had taken the baby with her and when he took in the groceries, he saw Rudell lying on a hammock on the front porch and realized the baby was still in the car. Five to ten minutes elapsed between the time he left the car and the time he realized the baby was missing. He ran back to

the car, but the baby was gone, and the police were not there. When he spoke to the police, they told him to go home and go to bed.

¶ 16    On recross-examination, Rothenbuehler testified that he didn't remember if the police had asked him if he drove the car. He denied telling the police that he had not been with Rudell that evening or saying that he had been at home while Rudell was out.

¶ 17    Officer Zia testified in rebuttal that he did ask Rothenbuehler if he had been with Rudell that night, but Rothenbuehler told him he had been inside the house. On cross-examination, he admitted that the police report did not contain Rothenbuehler's statements.

¶ 18    The trial court found Rudell guilty of both charges and sentenced her to six months of supervision, parenting class, and drug and alcohol treatment. In discussing the sentence, the trial court then elaborated on its reasoning for finding Rudell guilty: "When it comes to a child and I'm not saying a mother is the sole responsibility but to me I remember mothers that was the strongest instinct in the world. To take a dog over a child I mean something's wrong with that picture. I don't care how old you are. You are going to take a pit bull and leave your child in the car? *** [A]s parents we can't negate nor give anyone else responsibility for our child. The father should have looked out for the child to make sure the child went before the groceries. *** The mother should have made sure that the child went before the dog. Both of them are responsible. But under the facts of this case I don't believe a word that the father said."

¶ 19    Commenting further on Rothenbuehler's credibility, the trial court said, "I did not believe the testimony. I found the testimony to be patently unbelievable. Incredible. All right? That's the way—I believe that she drove the car, she got there. He was there. He wanted to know where his child was at. She didn't even know where the car was at. They left the house at 12:00, it's five minutes away. What happened within an hour. One hour from 12 to 1? What's going on between one hour? No one knows."

¶ 20    Rudell moved for a new trial, arguing (i) the State had not proven her guilty beyond a reasonable doubt and (ii) her statements to police should have been suppressed. Rudell also provided statements from two potential new witnesses that Rothenbuehler had been with Rudell at the barbecue earlier that day and a video of the barbecue that showed Rothenbuehler present with Rudell. The trial court denied the motion for a new trial.

¶ 21    Though Rudell's brief states that she is appealing her conviction for public intoxication, the brief contains no argument as to that conviction, and so we find it waived. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (points not argued in appellant's brief are waived).

¶ 22                                    ANALYSIS
¶ 23                Evidence Was Sufficient to Support the Conviction
¶ 24    When challenging the sufficiency of the evidence, the relevant inquiry, after viewing the evidence in the light most favorable to the prosecution, involves whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). As a reviewing court, we will not substitute our judgment for that of the trier of fact on questions going to the weight of the evidence or the credibility of the witnesses. *Id.* at 375. And we will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Id.* We leave the credibility of witnesses for the trial court, and we will

not reverse a conviction based on contradictory evidence presented by witnesses. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009).

¶ 25    A person endangers a child when he or she knowingly causes or permits the life or health of a child to be endangered or the child to be placed in circumstances that endanger the child's life or health. 720 ILCS 5/12C-5(a) (West 2014). Further, "[a] trier of fact may infer that a child 6 years of age or younger is unattended if that child is left in a motor vehicle for more than 10 minutes." 720 ILCS 5/12C-5(b) (West 2014).

¶ 26    Rudell begins by arguing that the evidence against her was insufficient, having been based solely on her drunken confession to police. This is incorrect: uncontested evidence (including from Rudell's own witnesses) established that the baby had been left unattended in the car for upwards of an hour, though the exact time frame is imprecise. But given the amount of time it would have taken for the baby to be discovered and the fire department to arrive, the time the baby was left unattended was well past the 10-minute mark. On its own, this evidence was sufficient to establish the elements of the statute. The accuracy of Rudell's statements to police (both police officers' testimony and written reports) presented a matter of witness credibility, and cross-examination fully brought out inconsistencies between the testimony and reports. Ultimately, the question becomes whom the trial court believed—and the trial court found Rothenbuehler's testimony incredible, explaining that the evidence showed Rudell had driven the baby home herself and then, in her intoxication, forgot the car's location. *Siguenza-Brito*, 235 Ill. 2d at 228 (witness credibility within province of trier of fact); see also *People v. Wilkenson*, 262 Ill. App. 3d 869, 875 (1994) (finding sufficient evidence of child endangerment despite inconsistencies between police testimony and arrest reports and despite possible alternative explanation for evidence).

¶ 27    Rudell also takes issue with the trial court's interpretation of subsection (b), which states that a trier of fact "may infer" a child is unattended when left alone in a car for more than 10 minutes. 720 ILCS 5/12C-5(b) (West 2014). The trial court characterized the "may infer" language as a "permissive presumption" or an "unrebutted" inference that "becomes a presumption." Rudell argues that the trial court turned the "may infer" language into an unconstitutional mandatory presumption struck down by our supreme court in *People v. Jordan*, 218 Ill. 2d 255, 265-67 (2006). The earlier version of this same law stated that "there is a rebuttable presumption" that a person endangered a child by leaving that child unattended in a car for more than 10 minutes. 720 ILCS 5/12-21.6(a), (b) (West 2002). *Jordan* held this language to be an unconstitutional mandatory presumption conflicting with the presumption of innocence and shifting the burden of persuasion to the defendant. 218 Ill. 2d at 265-67. The legislature amended the statute with the "may infer" language.

¶ 28    The trial court's statement accurately interprets the "may infer" language. As *Jordan* noted, a permissive presumption exists where the statute "allows, but does not require, the fact finder to infer the existence of the ultimate or presumed fact upon proof of the predicate fact, without placing any burden on defendant." *Id.* at 265. The "may infer" language of subsection (b) does just that, so the trial court accurately recognized a presumption existed (though the statute no longer uses the word presumption). The constitutional concerns expressed in *Jordan* do not arise here: the trial court was not required to presume Rudell's guilt based on the baby being unattended in the car for a period of time and had the ability to infer guilt based on that predicate fact. The mandatory nature of the *Jordan* presumption—not the presumption itself—violated the constitution.

¶ 29 Finally, Rudell takes issue with the trial court's assignment of culpability to her, rather than Rothenbuehler—for Rudell's trial strategy had been to blame Rothenbuehler for leaving the baby in the car. Though we might wonder why the police apparently did not investigate Rothenbuehler's possible responsibility or why no child endangerment charges were filed against him, neither police tactics nor a prosecutor's charging decision have any relevance whatsoever with the sufficiency of the evidence. The trial court rebuked both parents, but only Rudell was on trial.

¶ 30 Denial of Midtrial Suppression Hearing

¶ 31 Rudell next challenges the admissibility of her statements to police, alleging that she was highly intoxicated when she gave those statements and had not been advised of her *Miranda* rights. But the procedural posture of the claim interferes with our review. Rudell acknowledges that her attorney did not move to suppress these statements before trial but instead first requested leave to file the motion during Officer Zia's testimony on cross-examination.

¶ 32 Motions to suppress statements should be filed before trial, "unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." 725 ILCS 5/114-11(g) (West 2014). The trial court has discretion whether to allow the motion to be filed, and we will not reverse that decision unless the trial court abused its discretion. *People v. Prince*, 362 Ill. App. 3d 762, 775 (2005).

¶ 33 Rudell alleges that her attorney was not aware of the grounds for the motion before trial because he did not realize that such a motion would be viable until Officer Zia testified, inconsistently with the police reports, that Rudell was not free to leave (and was in custody, requiring *Miranda* warnings) before she was asked any questions by police. (The police reports state that police placed her in custody after she made her statements.) We find this unconvincing. Surely the statements Rudell gave to police would be viewed as important, and those statements were contained in the police report. See *People v. Washington*, 182 Ill. App. 3d 168, 173 (1989) (where defendant's statement contained in police report was tendered before trial, defendant deemed properly notified of possible grounds for motion to suppress). Rudell's attorney was apparently aware of the facts on which a motion could have been filed—as the trial court pointed out, the police reports do not indicate that Rudell was Mirandized, either before or after speaking to police. Counsel also had access to both Rudell and Rothenbuehler, who presumably could have informed him whether Rudell had been Mirandized.

¶ 34 Further, there was an even more obvious ground for a motion to suppress: that Rudell was too intoxicated to knowingly waive her right against self-incrimination, regardless of when (or if) she was advised of her rights. See, *e.g.*, *People v. Johnson*, 285 Ill. App. 3d 802, 812 (1996) (defendant's statement will be suppressed on grounds of intoxication if defendant was so grossly intoxicated as to be incapacitated). Both Rothenbuehler and Griffith testified relative to Rudell's extreme intoxication, so much so that she could hardly walk. Her degree of inebriation even surprised Rothenbuehler. The police reports provide further confirmation with three separate references to Rudell's intoxication that night.

¶ 35 Given these facts, we cannot say the trial court abused its discretion in denying Rudell's counsel an opportunity for a suppression hearing after trial had begun because defense counsel was aware of the potential grounds before trial. As the record was not developed in the trial court, we cannot review whether Rudell's statements should have been suppressed. Further,

because the trial court did not err, this issue does not meet even the first prong of the "plain error" standard. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010) (to meet plain error standard, defendant must show a clear or obvious error).

¶ 36                                   Denial of Motion for New Trial

¶ 37        Next, Rudell argues that the trial court should have granted her motion for a new trial based on newly discovered evidence. The evidence was a video of Rudell, Rothenbuehler, and Griffith at Griffith's home before Rudell and Rothenbuehler left with the baby. There were also affidavits from two witnesses stating that Rothenbuehler had been with Rudell and the baby at a barbecue earlier in the day. Rudell alleges that this new evidence would have supported Griffith's testimony that Rothenbuehler was at Griffith's home that evening and undercut any evidence that Rothenbuehler was at home all evening and not out with Rudell.

¶ 38        We review the denial of a motion for a new trial based on newly discovered evidence under an abuse of discretion standard. *People v. Gabriel*, 398 Ill. App. 3d 332, 350 (2010). New evidence warrants a new trial only when it (1) has been discovered since the trial, (2) could not have been discovered before trial with due diligence, (3) is material and not cumulative, and (4) is sufficiently conclusive that it would probably change the result on retrial. *Id.*

¶ 39        The trial court did not abuse its discretion. Rudell did not show that the video and affidavits could not have been obtained before trial through exercise of due diligence. Further, it is cumulative to evidence already presented: Griffith testified that Rothenbuehler and Rudell were together at his house, and Rothenbuehler testified that he had been at the barbecue with Rudell earlier. And it is certainly not conclusive. The question of where Rothenbuehler had been that night ultimately had no effect on the verdict, which was based on the trial court's conclusion that an intoxicated Rudell had neglected to take the baby out of the car, whether or not she was with Rothenbuehler.

¶ 40        Finding no error, we reject Rudell's claim of cumulative error.

¶ 41        Affirmed.