NOTICE
Decision filed 06/18/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170287-U

NO. 5-17-0287

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 16-CM-307 |
| | ) | |
| CYPRESS GIBSON, | ) | Honorable |
| | ) | Eugene E. Gross, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State presented sufficient evidence to establish the elements of endangering the life of a child, and the trial court did not commit reversible error in instructing the jury.

¶ 2    Cypress Gibson, the defendant, appeals from her conviction of endangering the life of a child (720 ILCS 5/12C-5(a)(1) (West 2016)), contending that the State did not prove her guilt beyond a reasonable doubt and that the trial court committed plain error in instructing the jury. We affirm.

1

¶ 3                                    BACKGROUND

¶ 4     On March 8, 2017, the State charged the defendant by information with endangering the life of a child in violation of 720 ILCS 5/12C-5(a)(1) (West 2016). The information alleged that on October 25, 2016, the defendant knowingly caused the lives of W.H. and M.H., minors under the age of 13 years old, to become endangered by leaving the children unattended in a vehicle. Prior to trial, the State waived jail time. On December 4, 2017, the court conducted a jury trial, at which the defendant appeared *pro se*. The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

¶ 5     On October 25, 2016, Lisa Rodenberg was sitting in her vehicle in the parking lot of the Dollar Tree store in Sparta when she noticed the defendant and the defendant's two children in a nearby vehicle. Concerned that the defendant was going to leave the children alone in the vehicle, Rodenberg pulled her car "up two rows" and remained in her vehicle. Rodenberg watched as the defendant exited her vehicle and went inside the store, leaving the two children unattended. Rodenberg testified the defendant was inside the store for five or six minutes.

¶ 6     While the defendant was inside the store, Rodenberg called and reported the incident to the Sparta Police Department. Officer Daniel Hanna responded to the location. Rodenberg waited for Officer Hanna in the Dollar Tree parking lot. When Officer Hanna arrived, Rodenberg reported that the defendant and the children had just left in their vehicle.

¶ 7    After speaking with Officer Hanna, Rodenberg drove to the Dollar Store in Sparta. When she pulled into the parking lot, Rodenberg saw the defendant's car parked a few spaces away from the entrance to the store. Rodenberg stated the defendant exited her vehicle, but left the engine running. The defendant locked the two children inside of the vehicle, and then went inside the store. Rodenberg testified that it would not have been possible for someone to see the defendant's vehicle from inside the store because the check-out lanes would have blocked the view. Rodenberg stated she sat outside the Dollar Store for at least six, and possibly up to ten, minutes. Again, Rodenberg called and reported the incident to the Sparta Police Department, and Officer Hanna responded to the location.

¶ 8    After arriving at the Dollar Store, Officer Hanna exited his patrol car and approached the defendant's vehicle. Officer Hanna testified the car windows were rolled up and the engine was running. Inside of the vehicle, Officer Hanna observed two children, a one-year-old and a two-year-old, awake in the backseat. Officer Hanna stated he was outside of the vehicle for approximately five minutes before the defendant exited the store and returned to her car.

¶ 9    At trial, the defendant admitted to leaving her children unattended in her vehicle while she went inside the two stores. The defendant asserted the children were asleep, so she left the engine running, rolled up the windows, and locked the doors while she went inside each of the stores. The defendant testified she was in the Dollar Tree for only three minutes, and that she purchased bottles, socks, and Goldfish crackers. The defendant stated that while she was in the Dollar Tree, she saw Rodenberg exit her vehicle,

approach the defendant's vehicle, and take a photograph of the defendant's children while they were alone in the car.

¶ 10   The defendant testified that the Dollar Tree did not have any children's shorts on the shelves, so she drove to the Dollar Store. The defendant stated she was inside of the Dollar Store for five minutes, during which time she went "to the back [of the store] to look for clothes," and then went to the clearance section and selected a pair of shorts. The defendant asserted she could see her children "the whole time." The defendant also testified she saw Officer Hanna "pull up" and that she immediately exited the store because, at that point, she had already paid for the shorts she had selected. The defendant maintained that Rodenberg and Officer Hanna exaggerated the amount of time she spent inside of the stores.

¶ 11   The jury found the defendant guilty of the charged offense and the trial court imposed $350 in fines. This appeal follows.

¶ 12                                    ANALYSIS

¶ 13                          Sufficiency of the Evidence

¶ 14   On appeal, the defendant argues the evidence was insufficient to sustain her conviction for the offense. On review of a challenge to the sufficiency of the evidence, this court determines whether any rational trier of fact could have found the required elements beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the verdict. *People v. Wheeler*, 226 Ill. 2d 92, 114, 116-17 (2007). The trier of fact is in the best position to judge the credibility of the witnesses, and its findings concerning

credibility are accorded great weight. *Wheeler*, 226 Ill. 2d at 114-15. On review, this court does not retry the defendant. *Wheeler*, 226 Ill. 2d at 114. We will reverse the jury's verdict only where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Wheeler*, 226 Ill. 2d at 115.

¶ 15    A person commits the crime of endangering the life or health of a child when she knowingly causes or permits the life or health of a child under the age of 18 to be endangered. 720 ILCS 5/12C-5(a)(1) (West 2016). The defendant was charged with endangering the life of a child, which does not require an actual injury. *People v. Wilkenson*, 262 Ill. App. 3d 869, 874 (1994). Endanger means there is " 'a potential or possibility of injury. The term does not refer to conduct that will result or actually results in harm, but rather to conduct that could or might result in harm.' " *People v. Jordan*, 218 Ill. 2d 255, 270 (2006) (quoting *People v. Collins*, 214 Ill. 2d 206, 215 (2005)). To sustain a conviction for endangering the life of a child, the State must prove the defendant placed "the child's life into danger of probable physical or mental damage." *Wilkenson*, 262 Ill. App. 3d at 874-75. On appeal, the defendant asserts the State failed to present any evidence that she knowingly placed her children's lives in peril of probable physical or mental harm.

¶ 16    Viewing the evidence in the light most favorable to the State, we believe a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Here, the evidence was that the defendant left her one-year-old and two-year-old children alone in a public parking lot, inside of a running vehicle, for several minutes on two separate occasions while shopping. First, she left them unattended in the parking lot

5

of the Dollar Tree for approximately five to six minutes, while she purchased bottles, food, and clothing for her daughter. The defendant then drove a second store, where she again left her children alone in the car for a minimum of five minutes, while she shopped for additional clothing for her daughter.

¶ 17    Although the defendant testified that the children were always within her sight, other evidence presented at trial undermined this testimony. Rodenberg's testimony that the defendant's car would not have been visible from inside of the Dollar Store, directly contradicted the defendant's testimony. Also, the defendant's testimony indicated that she searched for, and selected, a variety of items at each store. The jury, as the trier of fact, was free to disbelieve the defendant's testimony that she was able to shop while maintaining a watchful eye on her children in the parking lot.  Furthermore, the defendant testified that she exited the store shortly after seeing Officer Hanna drive into the parking lot; however, Officer Hanna's testimony was that he stood outside of the defendant's vehicle for five minutes before the defendant exited the store. The fact that Officer Hanna was standing outside of the defendant's vehicle for an extended period of time, without the defendant noticing, suggests that the children were not visible to the defendant "the whole time."

¶ 18    The defendant's children were very young and, for all intents and purposes, defenseless. Contrary to the defendant's assertions otherwise, the evidence suggests that the children, and any potential surrounding dangers, were not within the defendant's view while she left the children alone. Specifically, the defendant was seemingly unaware that Officer Hanna was standing near her vehicle, and her unattended children, in a public

parking lot for five minutes. Furthermore, it is concerning that the defendant left her children unattended a second time. The defendant testified that while she was inside of the Dollar Tree, she saw Rodenberg exit her vehicle, approach the defendant's car, and photograph the defendant's unattended children. A prudent parent would likely be concerned or disturbed by a relative stranger[1] going out of their way to take photographs of her children sitting in a vehicle. The fact that the defendant left her children alone a second time, after noticing photographs being taken of her children by a relative stranger, she took un unacceptable risk with her children by leaving them alone in the car. While the defendant was in each of these stores, her very young children were certainly exposed to the possibility of injury, which is all that is required by the statute.

¶ 19    Again, the State was not required to prove an actual injury, but instead that the defendant endangered the lives of her children by placing them in a situation where there was "a potential or possibility of injury." In this case, the evidence suggests that the defendant left her two young children unattended, in two separate public places, and mostly out of her view for at least 10 minutes. Based on this evidence, a rational trier of fact could have found that the defendant's conduct placed her children in a situation where they were exposed to potential harm. In light of the foregoing, we find there was sufficient evidence to support the jury's verdict.

---

[1]At trial, the State asked the defendant whether she knew Rodenberg. The defendant replied that she thought she may know Rodenberg's son.

¶ 20                          <u>Instructional Error</u>

¶ 21    The defendant also argues the trial court denied her a fair trial by giving the jury

misleading instructions concerning the mental state required for the offense. As already

noted, the offense of endangering the life of a child requires the defendant to

"knowingly" cause or permit the life of a child to be endangered. 720 ILCS 5/12C-5(a)(1)

(West 2016).

¶ 22    At trial, the court gave the jury Illinois Pattern Jury Instructions, Criminal, Nos.

11.29 and 11.30 (4th ed. 2000) (hereinafter IPI Criminal 4th). IPI Criminal 4th No. 11.29

stated that "[a] person commits the offense of endangering the life of a child when he has

the care or custody of a child and *willfully* causes or permits the life of that child to be

placed in such a situation that the child's life or health may be endangered." (Emphasis

added.) IPI Criminal 4th No. 11.30 provides as follows:

> To sustain the charge of endangering the life of a child, the State must prove the following propositions:
>
> *First Proposition*: That the defendant had the care or custody of W.H. and M.H.; and
>
> *Second Proposition*: That the defendant willfully caused or permitted W.H. and M.H. to be placed in a situation that endangered the life or health of W.H. and M.H. ***

¶ 23    The defendant, who was *pro se*, did not object to the instruction at trial. Generally,

a defendant forfeits review of a putative jury instruction if she fails to object to the

instruction or offer an alternative instruction at trial and does not raise the instruction

issue in a posttrial motion. *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Illinois

Supreme Court Rule 451(c) (eff. Apr. 8, 2013), however, states that substantial defects in

8

jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require." This is a limited exception and is co-extensive with the plain-error clause in Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). *Herron*, 215 Ill. 2d at 175.

¶ 24 The plain-error doctrine allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Under the first prong, the defendant must demonstrate that the error was prejudicial, which is to say that there was a plain error and the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant. *Piatkowski*, 225 Ill. 2d at 564-65. Under the second prong, the defendant must demonstrate that there was a plain error and "the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *Piatkowski*, 225 Ill. 2d at 565. A plain error is one that is clear or obvious. *People v. Radford*, 2018 IL App (3d) 140404, ¶ 43. A fair trial is not necessarily a perfect trial. *Herron*, 215 Ill. 2d at 177.

¶ 25 Prior to 2013, the child endangerment statute required a showing that the defendant "willfully" caused or permitted a child to be placed in circumstances that endangered the life or health of the child. See 720 ILCS 5/12-21.6 (West 2010). In *People v. Jordan*, 218 Ill. 2d 255, 270 (2006), the Illinois Supreme Court held that "willful" conduct was synonymous with "knowing" conduct for child endangerment offenses. See also *Radford*, 2018 IL App (3d) 140404, ¶ 44. The General Assembly

9

subsequently codified *Jordan* by amending the requisite mental state for child endangerment from "willful" to "knowing." *Radford*, 2018 IL App (3d) 140404, ¶ 44; see also Pub. Act 97-1109, §§ 1-5 (eff. Jan. 1, 2013); compare 720 ILCS 5/12-21.6 (West 2010), with 720 ILCS 5/12C-5 (West 2012). This amendment, however, did not substantively change the law because "willful" and "knowing" are the same state of mind for child endangerment offenses. *Radford*, 2018 IL App (3d) 140404, ¶ 44; *People v. Melton*, 282 Ill. App. 3d 408, 417 (1996).

¶ 26    IPI Criminal 4th Nos. 11.29 and 11.30 do not accurately reflect the current wording of the statute. Although the trial court committed error by giving this instruction, the State, as a practical matter, also had an obligation to know what was in its charging instrument, and ensure that the trial court gave the correct wording of the statute to the jury. Although the trial court erred in giving an instruction that did not conform to the language of the statute, the terms "willful" and "knowing" are considered synonymous for the intent required for commission of the offense. Based on our review of the record, we find that the defendant has failed to demonstrate that the evidence was so closely balanced that this error alone threatened to tip the scales of justice against her, or that the error was so serious that it affected the fairness of her trial. In the future, perhaps the I.P.I. Instructions will be amended to correct this unfortunate error. But under the circumstances presented in this case, we find no plain error occurred.

¶ 27                                    CONCLUSION

¶ 28    Based on the foregoing, we find the State presented sufficient evidence to support the defendant's conviction of endangering the life of a child and that the trial court did

10

not commit reversible error in instructing the jury. The judgment of the trial court is affirmed.

¶ 29   Affirmed.